J-S13010-24

2024 PA Super 114

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN LEONARD CORBIN | : | |
| | : | |
| Appellant | : | No. 1393 WDA 2023 |

Appeal from the Order Entered November 6, 2023
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000327-2003

BEFORE: KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: JUNE 3, 2024**

Appellant, John Leonard Corbin, appeals from the order entered in the Court of Common Pleas of Beaver County denying his Petition for Judicial Relief in which he sought declaratory relief stating that he had satisfied all court-ordered restitution obligations, injunctive relief directing cessation of further collections, and compensatory relief for alleged excessive restitution payments made. After careful review, we affirm.

The trial court sets forth the pertinent procedural history, as follows:

This case arose out of the homicide of David Kyler, the husband of Appellant's mother, Mildred Corbin. At trial held in 2004, the Commonwealth presented evidence to the jury that Appellant had killed David Kyler by striking him in the head with a hammer during a physical altercation between the two men while they were alone in the home shared by Mr. Kyler and Ms. Corbin. Following the homicide, Appellant rifled through a few dresser drawers and a jewelry box in the home, and he broke open a piggy bank, taking the money he found there.

_____

[*] Former Justice specially assigned to the Superior Court.

Following the jury trial, on March 4, 2004, the jury returned a verdict finding Appellant guilty of second-degree murder, third-degree murder, aggravated assault, robbery, and theft by unlawful taking. On April 7, 2004, President Judge McBride sentenced Appellant to life imprisonment without the possibility of parole. President Judge McBride further sentenced Appellant to pay restitution to Mildred Corbin, Appellant's mother and the wife of the deceased victim,[fn] in the amount of $3,590.36. President Judge McBride also sentenced Appellant to pay laboratory costs to the Greensburg Regional Laboratory in the amount of $2,967.25. In total, Appellant's restitution [and costs] obligation amounted to $7,102.81. (Entry of Judgment Notice – Restitution, Fees, Costs, Fines, and Penalties, 7/8/2004).

---

FN. In ***Commonwealth v. Labarre***, [961 A.2d 176 (Pa. Super. 2008)], the Superior Court held that "because an estate stands in the shoes of the victim under the restitution statute, it is the 'victim' within the meaning of that statute." [***Id.*** at 181]. The [trial] court finds this case noteworthy, as Judge McBride's sentence order does not specify the reasoning behind Appellant's sentence to pay restitution to Mildred Corbin, and the entire record of this case is unavailable to the [trial court] due to its age.

---

On August 23, 2023, Appellant filed a Petition for Judicial Relief. In his Petition, Appellant [sought] the following relief from the Court: (1) declaratory relief stating that Appellant has satisfied all restitution and other court-ordered obligations in the above-captioned case; (2) injunctive relief directing the immediate cessation of all Act 84 collections; (3) compensatory relief for the moneys collected up to June 30, 2023, in the amount of $335.06, which Appellant alleges is in excess of the amount ordered by President Judge McBride; (4) compensatory relief for those excessive moneys collected beyond June 30, 2023.

In support of these requests, Appellant cited 42 Pa.C.S.A. § 9728(b)(5)(i) and § 9728(g.1). Appellant argued that because his mother Mildred Corbin passed away in March 2019, any restitution still owed to her was subject to annulment, and Appellant was thereby entitled to be released of his monetary obligation to Ms. Corbin.

Appellant also alleged that any restitution payments he made to his mother after her death should be redirected toward the payment of Appellant's other court-ordered payments, fees, and costs. Appellant attached the payment plan of his case as Exhibit B1-7 to show that from July 27, 2004, to March 19, 2019, the Pennsylvania Department of Corrections ("DOC") collected a total of $2,204.39 from his prison inmate account. Appellant also stated that as of June 30, 2023, a grand total of $3,972.50 had been collected from his inmate account for the costs and fees President Judge McBride ordered him to pay.

The Commonwealth filed an Answer to Appellant's Petition on October 2, 2023. Appellant filed a Response to Commonwealth's Answer on October 20, 2023.

. . .

The [trial court] held a hearing on Appellant's Petition on the scheduled date, November 6, 2023. Appellant participated in the hearing by video conference call. At the hearing, the Solicitor of the Clerk of Courts . . . presented the testimony of . . . the Clerk of Courts for Beaver County. The Clerk of Courts testified 42 Pa.C.S.A. § 9728(g.1) states that "no less than 50% of all money collected by the county probation department . . . shall, until satisfaction of the defendant's restitution obligation, be used to pay restitution to victims." [The Clerk of Courts] indicated that it is standard practice in Beaver County to use 100% of payments to satisfy restitution payments until the restitution payment is satisfied.

[The Clerk of Courts] indicated that she received restitution amounts [from Appellant] pursuant to President Judge McBride's Sentence Order of April 7, 2004. The Clerk of Courts received a total of $1,583.02 in payments from Appellant, which were forwarded to the victim Mildred Corbin. [The Clerk of Courts] indicated that after Mildred Corbin moved to Georgia on or about June 21, 2018, the checks of Appellant's restitution payments that the Clerk of Courts sent to Ms. Corbin were returned uncashed.

In fact, according to an obituary presented by the Commonwealth, Ms. Corbin passed away on March 16, 2019, in Columbia, Georgia. []. On February 13, 2023, the Clerk of Courts forwarded Appellant's [unremitted] payments of $2,007.34 to the

Department of Revenue's Bureau of Unclaimed Property. [The Clerk of Courts] also testified at the hearing that Appellant still owes $1,905.99 to be paid to Greensburg Regional Laboratory.

Trial Court Opinion, 12/11/23, at 1-4.

Appellant presents the following question for this Court's review:

Whether the [trial court] abused its discretion in denying the Appellant's Petition for Judicial Relief?

Brief for Appellant, at 7.

Pursuant to 18 Pa.C.S.A. § 1106(c)(3), a defendant required to pay restitution as part of their sentence may "at any time" file a petition in the trial court to modify or amend the restitution order. **Commonwealth v. Gentry**, 101 A.3d 813, 816 (Pa. Super. 2014). "Our case law in this Commonwealth establishes that [this] statute creates an independent cause of action for a defendant to seek a modification of an existing restitution order." **Id**.

The crux of Appellant's argument, as stated in his appellate brief, asserts,

Appellant is ultimately asking the court to apply the money unclaimed by his mother due to her death and apply it to his fines, costs, and fees. This could be done simply by amending the amount of restitution to the amount [Mother] actually claimed and directing the Clerk of Courts to seek remittance of the amount forwarded to the Treasurer of Pennsylvania as unclaimed.

Brief for Appellant at 13.

There is no reasonable dispute to the trial court's observation that Appellant would have enjoyed a windfall in the form of a $2,007.34 reduction to his restitution obligation if the trial court had applied the unremitted portion

- 4 -

of restitution owed to his widowed Mother to cover the outstanding balance of the separate costs obligation he owes to the Greensburg Regional Laboratory. Appellant responds, however, that although the intent underlying the trial court's order may be consistent with the rehabilitative purposes of restitution, the unintended consequence of placing him in position to claim the unremitted portion of his restitution payments under Section 3101(e) of the Probate, Estates and Fiduciaries Code[1] undermines such intent, as he contends he has

_____

[1] Section 3101(e) provides,

**(e) Unclaimed property.--**

> (1) In any case where property or funds owned by an individual who has died a resident of this Commonwealth have been reported to the Commonwealth and are in the custody of the State Treasurer as unclaimed or abandoned property, the State Treasurer, at any time after the death of the individual, shall be authorized under this section to distribute the property or to pay the amount being held in custody where all of the following conditions are present:
>
> > (i) The amount of the funds or the value of the property is $11,000 or less.
> >
> > (ii) The person claiming the property or the funds is the surviving spouse, child, mother or father, or sister or brother of the decedent, with preference given in that order.
> >
> > (iii) A personal representative of the decedent has not been appointed or five years have lapsed since the appointment

*(Footnote Continued Next Page)*

of a personal representative of the decedent.

(2) Upon being presented with a claim for property owned by a decedent, the State Treasurer shall require the person claiming the property to provide all of the following prior to distributing the property or paying the amount held in custody:

(i) A certified death certificate of the owner.

(ii) A sworn affidavit under the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities) setting forth the relationship of the claimant to the decedent, the existence or nonexistence of a duly appointed personal representative of the decedent and any other persons that may be entitled under this section to make a claim to the decedent's property.

(iii) Other information determined by the State Treasurer to be necessary in order to distribute property or pay funds under this section to the proper person.

(3) If the State Treasurer determines the claimant to be a person entitled to claim property of a decedent owner, the State Treasurer shall pay or distribute such property to the claimant and shall thereby be released to the same extent as if payment or distribution had been made to a duly appointed personal representative of the decedent and shall not be required to oversee the application of the payments made. Any claimant to whom payment is made shall be answerable therefore to anyone prejudiced by an improper distribution or payment.

20 Pa.C.S.A. § 3101(e).

the right to access the funds under Section 3101(e) as his mother's primary heir.

Specifically, Appellant posits that by failing to amend the restitution order as he requested, the trial court has left him no choice but to claim the unremitted portion as a primary heir to Mother's estate and, thus, frustrate the purpose of his restitution sentence. He asks somewhat disingenuously, "How does leaving the door open for the Appellant to claim the victim's unclaimed restitution impress upon him that his conduct caused the victim's loss? How does it follow the trial court's stated rational [sic] of believing it unjust to allow the Appellant to benefit (by analogy to the slayer's act [*see infra*]) from the victim's death?" He answers his own question, "It does not . . . .", *see* Brief of Appellant at 16, as if he lacks the capacity to forgo pursuing this claim in favor of simply fulfilling the restitution sentence and its rehabilitative purpose that he claims to appreciate.

Initially, we reject Appellant's position that the trial court's refusal to apply the unremitted restitution payments to the outstanding balance of his laboratory fees is "manifestly unreasonable and inconsistent with the Sentencing Code." To the contrary, it is entirely reasonable and consistent with the Sentencing Code for the trial court to recognize the undeserved payout that would result by refunding unremitted restitution payments to Appellant and applying them to still unpaid portions of his lab fees, thereby effectively decreasing the amount of his aggregate sentence of restitution and costs by over $2,000.00.

The primary purpose of restitution is not to compensate the victim but to rehabilitate the offender. ***Commonwealth v. Brown***, 956 A.2d 992, 996 (Pa. Super. 2008). On this point, we have explained,

> "[R]estitution does **not** seek, by its essential nature, the compensation of the victim[.]" ***Pleger***, 934 A.2d at 720 (emphasis added). Rather, the primary purpose of restitution is to rehabilitate the offender by impressing on him the fact that his actions damaged the victim. ***Id***. "In the end, restitution is not simply an award of damages, but, rather, a sentence." ***Id***. The amount of restitution set by the court is related to the amount of damage sustained by the victim, but restitution is not itself a civil damage award. ***Id***. "It is true that restitution helps the victim, but this fact is secondary to the reality that restitution is an aspect of sentencing imposed by the court on an offender in order to facilitate the administration of criminal justice." ***Id***. Where the defendant has caused personal injury or property damage to the victim, restitution is mandatory. ***Id.***, *citing* 42 Pa.C.S.A. § 9721(c) and 18 Pa.C.S.A. § 1106(a).

***Brown***, ***supra*** (emphasis in original). Applying ***Brown*** to the present facts, we concur with the trial court's determination that effectively refunding Appellant a portion of his unremitted restitution payments such that he receives the benefit of compensation therefrom would negate the rehabilitative purpose of the reasonable restitution payments[2] that the trial court's order requires him to complete.

Furthermore, to the extent the remainder of Appellant's argument hinges on his apparent assumption that because his Mother's husband is deceased, he automatically supplants husband as the priority heir to Mother's

---

[2] Notably, Appellant does not contest the reasonableness of the aggregate restitution and costs of $7,102.81 imposed by the trial court.

intestate estate and thus stands as a "proper person" entitled under Section 3101(e) to claim his Mother's unremitted restitution payments, he has failed to offer a developed legal argument to this end. For this reason, we reject his position that his acquisition of the unremitted restitution payments placed in the custody of the State Treasurer as unclaimed or abandoned property would be a self-evident matter of right under Section 3101(e).

Specifically, Appellant has not shown that he meets the criteria of Section 3101(e) necessary to demand that the Pennsylvania State Treasurer distribute his unremitted restitution payments back to him as a "proper person" under that section, particularly in light of the trial court's observations that the requested refund through Section 3101(e) not only would flout the punitive and rehabilitative purposes of restitution in this case but also would offend equitable principles and notions of sound public policy, both generally and as specifically applied in the Slayer Act, 20 Pa.C.S. § 8801 et seq.,[3] which

_____

[3] This Court has described the Slayer Act as follows:

> Pennsylvania's Slayer Act[] ("the Slayer Act") defines a "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." 20 Pa.C.S. § 8801. To prevent slayers from acquiring property or benefits from the estates of those they killed, the Slayer Act provides:
>
> > No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following.

*(Footnote Continued Next Page)*

the trial court appropriately invoked by analogy as additional reasonable grounds to deny Appellant's requested refund.[4] The Slayer Act "seeks to determine whether an individual acquired any property or benefit from a killing and to prevent such person from profiting by his own wrongdoing." ***Dinardo v. Kohler***, 304 A.3d 1187, 1197 (Pa. 2023). What constitutes a benefit under

---

> 20 Pa.C.S. § 8802. To accomplish this goal, the Slayer Act deems slayers,
>
>> to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or have been acquired by dower, by curtesy or by statutory right as surviving spouse.
>> 20 Pa.C.S. § 8803. Further, the Slayer Act expressly states that it shall "be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed." 20 Pa.C.S. § 8815.
>
> In addition to the Slayer Act, the Probate, Estates and Fiduciaries Code expressly provides:
>
>> **Slayer's share.**—Any person who participates either as a principal or as an accessory before the fact in the wilful [sic] and unlawful killing of any person shall not in any way acquire property or receive any benefits as the result of such killing, but such property or benefits shall be distributed as provided in Chapter 88 of this code (relating to slayers).
>
> 20 Pa.C.S. § 2106(c).

***In re Est. of McAndrew***, 131 A.3d 988, 990 (Pa. Super. 2016)

[4] The trial court appropriately acknowledges that it applies the Slayer Act by analogy because the Act precludes a slayer from benefitting from the estate of the decedent, who is defined by statute as the victim of the slayer's conduct.

the Slayer's Act "has been broadly construed to include anything that works to the advantage or gain of the recipient[.]" *Id.* (citing ***Drumheller v. Marcello***, 532 A.2d 807, 810 (1987) (observing Slayer Act has been applied to bar recovery of any benefit of any kind.).[5]

We understand the trial court's decision in this matter as one appropriately recognizing the intersection between principles underlying the Slayer Act, as applied to this case by analogy, and Section 3101(e)'s vesting of power unto the Treasurer to acquire information needed to determine who presents as a "proper person" to claim property. Presented with no meaningful argument contesting this relationship, we conclude that it was within the sound discretion of the trial court to enter its order directing Appellant to continue payments required under his original sentence of restitution. Accordingly, we affirm.

Order affirmed.

---

[5] ***See*** the Slayer Act's section 8815, "Broad construction; policy of State", which provides, "This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed." 20 Pa.C.S.A. § 8815.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/3/2024