2024 PA Super 316

| | | |
|---|---|---|
| FOXFIELD AT NAAMAN'S CREEK HOMEOWNER'S ASSOCIATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAECHELLE EVENTOFF | : | |
| | : | No. 1017 EDA 2024 |
| | : | |
| APPEAL OF: REVERSE MORTGAGE FUNDING, LLC | : | |

Appeal from the Order Entered March 6, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2020-006082

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

OPINION BY KUNSELMAN, J.: **FILED DECEMBER 31, 2024**

In this foreclosure action, we must decide the priority of liens when a homeowner's association forecloses on property of one of the owners who failed to pay their homeowner association's ("HOA") assessment. Here, Foxfield at Naaman's Creek Homeowner's Association ("Association") foreclosed on property owned by Raechelle Eventoff ("Eventoff") when she failed to pay her HOA assessment. The Delaware County sheriff sold the property and proposed a distribution of proceeds that paid the Association but did not divest the reverse mortgage of Reverse Mortgage Funding, LLC ("RMF"). The Association filed exceptions, which the trial court granted. The trial court determined that RMF's mortgage did not have priority over the

Association's lien under the Uniform Planned Community Act ("UPCA")[1] and divested RMF's mortgage. RMF appealed. Upon review, we reverse.

By way of factual background, the Association is a Pennsylvania non-profit corporation created pursuant to the UPCA.[2] On September 7, 2004, the Association recorded its declaration and thereby perfected a statutory lien against this condominium property for various fees and assessments pursuant to its governing documents and the UPCA.

In 2005, Eventoff purchased the unit at 1702 Magnolia Court, Garnet Valley, Pennsylvania, part of the Foxfield at Naaman's Creek community ("the property"). On May 26, 2005, Eventoff obtained a mortgage from Morgan Stanley to purchase the property, which was recorded on July 12, 2005 ("original mortgage") in the amount of $259,900.

Years later, on March 30, 2011, Eventoff refinanced the property and obtained a reverse mortgage against it in the amount of $427,500 from Bank of America.[3] This mortgage was recorded on April 26, 2011. Bank of America paid off the original mortgage with Morgan Stanley. The Bank of America

---

[1] 68 Pa.C.S.A. § 5101 *et. seq.*

[2] To be clear, the Uniform Condominium Act ("UCA"), 68 Pa.C.S.A. § 3101 *et seq.*, although similar, is separate and distinct from the Uniform Planned Community Act. RMF repeatedly references the UCA although the Association's complaint indicated that it was formed under the UPCA.

[3] The Secretary of Housing and Urban Development ("HUD") also had a mortgage on the property for this loan. HUD is the insurer for reverse mortgages.

mortgage was then assigned multiple times with RMF ultimately becoming the holder.

Beginning in December 2015, Eventoff fell behind on various fees and assessments imposed by the Association. As a result, on September 16, 2020, the Association filed an *in rem* foreclosure action. On June 3, 2021, a default judgment was entered in the amount of $51,778.20 against the property. The Association filed a writ of execution and started the process to sell the property at a sheriff's sale. The Association sent notice of the impending sale to multiple entities, including Bank of America, HUD, and Reverse Mortgaging Service Department, the mortgage servicer. The Association did not send notice to RMF. On May 20, 2022, the property was sold at the sheriff's sale to Mohamed Ahmadat ("Buyer") for $75,000. At the time of sale, the sheriff did not indicate to prospective purchasers that the property was being sold subject to any mortgage. RMF did not attend the sale to purchase the property.

On June 9, 2022, the sheriff issued a proposed schedule of distribution of the sale proceeds for the property which, after paying certain costs and taxes, allocated the balance of the sale proceeds to the Association. It also listed RMF as holding the senior lien, which was not divested by the sale. The Association advised the sheriff that RMF's lien should be divested, but the sheriff told the Association to file exceptions.

On June 20, 2022, the Association filed exceptions asking the trial court to amend the proposed schedule of distribution to indicate that RMF's lien was

divested by the sale. Buyer intervened and supported the Association's exceptions. RMF also intervened, responded to the Association's exceptions, and maintained that its mortgage was a senior lien and should not be divested.

Following argument, the court concluded that the Association's lien had priority over RMF's mortgage. Thus, on September 27, 2023, the trial court granted the Association's exceptions, ordered that RMF's mortgage be divested, and directed the sheriff to amend its schedule of distribution. RMF filed a motion for reconsideration, which the trial court granted. After additional briefing and argument, the trial court issued an order on March 6, 2024, reaffirming its original decision.

RMF filed this timely appeal. RMF raises the following three issues for our review:

> 1. Whether [the Association], which lien was paid in full from the proceeds of the sheriff's sale, had legal standing to file exceptions to the sheriff's sale schedule of distribution, an issue not addressed by the [c]ourt below?
>
> 2. Whether the trial court erred in finding that RMF, [whose] mortgage was a first lien mortgage on the [p]roperty, which may not be divested under the Lien Priority Law, was not a "first mortgage holder" as defined in the Pennsylvania [Uniform Planned Community Act] such that RMF's lien was discharged by the foreclosure of unpaid condominium fees and a sheriff's sale at which RMF did not bid for the Property? 42 Pa. C.S.A. § 8152(a); 68 Pa. C.S.A. § [5315(b)].
>
> 3. Whether the trial court erred in holding that RMF received legally adequate notice to be bound by the sheriff's sale even though it was undisputed that RMF was not listed in [the Association's] Rule 3129.1 Affidavit, nor served with written notice of the sale by mail at its legal address pursuant to Rule 3129.2(c)?

- 4 -

RMF's Brief at 6.

In its first issue, RMF claims that the Association did not have standing to file exceptions. Specifically, RMF argues that the proceeds of the sale were sufficient to pay the Association's judgment. As such, RMF maintains that the Association suffered no injury from the sheriff's proposed distribution of sale proceeds and, therefore, lacked standing. RMF's Brief at 14, 16.

"[A] party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." **Merrill Lynch Mortgage Capital v. Steele**, 859 A.2d 788, 789–90 (Pa. Super. 2004). "A party has standing if he is aggrieved, *i.e.,* he can show a substantial, direct, and immediate interest in the outcome of the litigation." **Id.** at 790.

However, it is well settled that "standing is not a jurisdictional question." **In re Paulmier**, 937 A.2d 364, 368 n. 1 (Pa. 2007). Therefore, the issue of standing "'may be waived by a party if not objected to at the earliest possible opportunity.'" **Hall v. Episcopal Long Term Care**, 54 A.3d 381, 399 (Pa. Super. 2012) (quoting **In re Estate of Brown**, 30 A.3d 1200, 1204 (Pa. Super. 2011)). "Challenges to a litigant's capacity to sue must be raised by way of preliminary objections or answer." **Huddleston v. Infertility Center of America**, 700 A.2d 453, 457 (Pa. Super. 1997).

Upon review of the record, we observe that RMF did not challenge the Association's standing when it responded to the Association's exceptions. Instead, RMF raised the issue of standing for the first time in its motion for

reconsideration. Thus, RMF's challenge to the Association's standing is waived.

In its second issue, RMF claims that the trial court erred in determining that RMF did not have a "first mortgage" under the UPCA thereby prioritizing the Association's lien and divesting RMF's mortgage as part of the sheriff's sale. RMF argues that "first mortgage" under the UPCA is not limited to a "purchase money," the original/initial, or earliest mortgage. Instead, RMF maintains that "first mortgage" means the most senior mortgage *existing on the property at the time*. It further maintains that the type of mortgage is irrelevant; the sole pertinent fact is the time of recording the lien. Therefore, according to RMF, the term "first mortgage" under the UPCA exceptions to lien priority covers all types of first mortgages whether by purchase money, refinance or consolidation, so long as it is recorded prior to the mortgagor's default of his or her obligations to a homeowner's association. Thus, RMF requests that we reverse the trial court's order. RMF's Brief at 19, 21, 23.

In response, the Association claims that the trial court correctly concluded that RMF was not a "first mortgage" holder. While the UPCA does not define "first mortgage," the Association maintains that "first mortgage" is not synonymous with "first priority." Instead, the Association claims, per the plain meaning of the statute, first mortgage relates only to the loan obtained for the initial purchase of the property. To conclude otherwise, would rewrite the statute. Nonetheless, the Association also argues that it perfected its lien

in 2004, well before RMF's reverse mortgage was filed, and therefore it had priority. Association's Brief at 10.

In granting the Association's exceptions, the trial court initially concluded that RMF did not have a "first mortgage" as contemplated by the UPCA. The court reasoned that "first mortgage" under the statute meant a "purchase money mortgage." Trial Court Opinion, 9/29/23, at 4. Upon reconsideration, however, the court abandoned this rationale and agreed with RMF that "first mortgage" did not necessarily mean a "purchase money mortgage." Instead, it concluded that the "first mortgage," in essence, meant the earliest mortgage in the history of the owner's property's record. Thus, Morgan Stanley's 2005 mortgage was still the property's "first mortgage," not RMF's.[4] Therefore, the trial court again concluded that the Association's lien had priority over RMF's mortgage because RMF's mortgage was not a "first mortgage" under the UPCA. The court ruled that RMF's mortgage was divested by the sheriff's sale. Trial Court Opinion, 3/6/24, at 3-4. We disagree.[5]

_____

[4] The court further concluded that RMF's mortgage was not recorded prior to the Association's lien because it was recorded in 2004, long before RMF's mortgage was recorded in 2011. However, the court did not apply this rationale upon reconsideration. **Id.**

[5] Where exceptions to the distribution of proceeds of a foreclosure sale are filed, a court will hear and determine them according to law and equity. **Extraco Mortg. v. Williams**, 805 A.2d 543 (Pa. Super. 2002). Our standard of review with respect to the action of a chancellor in equity is limited. We will reverse only where the trial court was "palpably erroneous, misapplied the law or committed a manifest abuse of discretion." **State St. Bank v. Petrey**, 819 A.2d 581, 584 (Pa. Super. 2003) (footnote omitted).

To resolve this issue, we must determine whether RMF's mortgage was divested based upon its relative priority to the Association's lien under the UPCA. Significantly, lien priority determines which liens are paid first and which liens are divested by a sale. *Farmers Trust Co. v. Bomberger*, 523 A.2d 790, 792 (Pa. Super. 1987) ("The priority of liens as they appear on record is prima facie evidence of the manner in which the proceeds are to be distributed.").

A sheriff's sale of an encumbered property affects mortgage liens on the property as follows:

**§ 8152. Judicial sale as affecting lien of mortgage**

**(a) General rule.--**Except as otherwise provided in this section, *a judicial or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property* except:

(1) Other mortgages, ground rents and purchase money due the Commonwealth.

(2) Taxes, municipal claims and assessments, not at the date of the mortgage duly entered as a lien in the office of the clerk of the court of common pleas.

(3) Taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it.

* * *

**(c) Sale on prior lien.**—A judicial or other sale of real estate in proceedings under a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien.

42 Pa.C.S. § 8152 (emphasis added).  ***See also Public Federal Sav. & Loan Ass'n v. Neumann***, 483 A.2d 505, 507 (Pa. Super. 1984) (stating sale of real property does not affect lien if mortgage is prior to all other liens on property).

In Pennsylvania, liens generally are prioritized based on the order in which they are recorded, *i.e.*, first in time, first in right.  ***See*** 42 Pa.C.S.A. § 8141.  However, under certain circumstances, a statutory lien, such as that provided by the UPCA, may affect this general rule.  In relevant part, the UPCA provides:

> **(a) General rule.--*The association has a lien on a unit*** for any assessment levied against that unit or fines imposed against its unit owner ***from the time the assessment or fine becomes due***.  The association's lien may be foreclosed in a like manner as a mortgage on real estate.  ***A judicial or other sale of the unit in execution of a common element lien or any other lien shall not affect the lien of a mortgage on the unit, except the mortgage for which the sale is being held, if the mortgage is prior to all other liens upon the same property except those liens identified in 42 Pa.C.S. § 8152(a) (relating to judicial sale as affecting lien of mortgage) and liens for planned community assessments created under this section.***  Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged under section 5302(a)(10), (11) and (12) (relating to power of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due to the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section.  If an assessment is payable in installments and one or more installments are not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.
>
> **(b) Priority of lien. –**

--A lien under this section is prior to all other liens and encumbrances on a unit except:

(i) *Liens and encumbrances recorded before the recording of the declaration.*

(ii) (A) **Mortgages** and deeds of trust on the unit **securing first mortgage holders and recorded before due date of the assessment** if the assessment is not payable in installments or the due date of the unpaid installment if the assessment is payable in installments.

(B) Judgments obtained for obligations secured by any such mortgage or deed of trust under clause (A).

(iii) Liens for real estate taxes and other governmental assessments or charges against the unit.

68 Pa.C.S.A. §§ 5315(a)–(b) (emphasis added). Essentially, this section establishes a lien for an association for unpaid assessments or fines. Such lien has statutory priority over all liens and encumbrances except "those recorded prior to the recordation of the declaration, those imposed for real estate taxes or other governmental assessments or charges against the unit, and first mortgages recorded before the date the assessment became delinquent." ***Id.*** at cmt. 2. The recording of the association's declaration constitutes notice and perfection of any lien issued under this statute. ***Id.*** at § 5315(d). However, an association's lien for an HOA assessment does not become effective until the time payment becomes delinquent. ***Id.*** at 5315(a). Consequently, if the mortgage is a "first mortgage" and was recorded before the association's lien (the effective date being when the HOA assessment became delinquent), it will be considered prior to the HOA assessment and

will not be divested.  Notably, this is consistent with the language of 42 Pa.C.S.A. § 8152.

Because the UPCA does not define the term "first mortgage" under Section 5315(b)(ii)(A), we must determine its meaning.  When addressing questions of statutory interpretation, we review the words of a statute under a *de novo* standard.  **Commonwealth v. Hart**, 28 A.3d 898, 908 (Pa. 2011). Accordingly, "we are not bound by the lower court's conclusions regarding the proper meaning of the applicable provisions of [a] statute." **Id.**  Rather,

> [o]ur interpretation is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.* which has as its paramount tenet that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.
>
> As we have often recognized, "[t]he General Assembly's intent is best expressed through the plain language of the statute." Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. This means ascribing to the particular words and phrases the definitions which they have acquired through their common and approved usage. [1 Pa.C.S.A. 1903.] It is only in instances where the words of a statute are not explicit, or they are ambiguous, is there need to resort to consideration of the factors in aid of construction enumerated in 1 Pa.C.S.A. § 1921(c).

**Hart**, 28 A.3d at 908 (internal citations omitted).  Moreover, when a term is not defined in a statute, "its common and approved usage may be ascertained by examining its dictionary definition."  **Id.** at 909 (citations omitted).  **See, e.g., Greenwood Gaming & Entertainment, Inc. v. Commonwealth**, 263 A.3d 611, 620-21 (Pa. 2021) (consulting dictionary definitions to ascertain

meaning of phrase "personal property"); ***Bruno v. Erie Insurance Co.***, 106 A.3d 48, 75 (Pa. 2014) (offering that, in determining a term's meaning, it is proper to consult dictionaries).

Instantly, we agree with the trial court that "first mortgage" does not mean only a "purchase money mortgage." A plain reading of the UPCA does not support this interpretation. "Purchase money mortgage" has a very specific meaning. Had the Legislature intended the UPCA's exception to apply only to a "purchase money mortgage" it would have used this term.

Additionally, we reject the Association's argument that "first mortgage" means only the original or initial mortgage. Again, had the Legislature intended this, it would have used this language. Instead, the Legislature used a broader, more flexible term, which would allow for changes to the recording docket.

Thus, to ascertain the meaning of "first mortgage," it is useful to consider its dictionary definition. Black's Law Dictionary defines "first mortgage" as [a] mortgage that is senior to all other mortgages on the same property. *First mortgage*, **BLACK'S LAW DICTIONARY** 1164 (10th ed. 2014). A "senior mortgage" is a "mortgage that has ***priority*** over another mortgage (a junior mortgage) on the same property." *Senior mortgage*, **BLACK'S LAW DICTIONARY** 1165 (10th ed. 2014) (emphasis added). It further defines "second mortgage" as "[a] mortgage that is junior to a first mortgage on the same property, but that is senior to any later mortgage." *Second mortgage*, **BLACK'S LAW DICTIONARY** 1165 (10th ed. 2014); ***see***

- 12 -

*also* 15 West's Pa. Prac., Mortgages 1:6 (3d ed.) (similarly explaining that the second mortgage is normally second or junior in priority to an earlier mortgage).

This is consistent with our Supreme Court's pronouncement more than a century ago when the High Court declared a first mortgage was the one prior to all other liens.

> The Act of April 6th, 1830 provides that, when the lien of a mortgage upon real estate **shall be prior to all other liens** upon the same, the lien of such mortgage shall not be destroyed or affected by sale of the real estate by virtue of any writ of *venditioni exponas* [you are to expose for sale]. That anyone who contracts for a **first mortgage**, or who deals in **first-mortgage bonds**, does not know the phrase means the mortgage described in that statute, is incredible. This mortgage has long been esteemed the safest and most valuable of all real-estate securities for investments. **The holder is not compelled to be ever watchful lest a subsequent creditor may sell at judicial sale and buy the property at a price that saves his debt at the loss of prior lien-creditors.** In the business of half a century, a **first mortgage** has come to be very well understood to be **one prior to all other liens**. That is the kind of mortgage which was guaranteed, and the bonds thereby secured Noble received on his contract. The learned judge of the Common Pleas well said, "When the parties **covenanted for a first mortgage**, it implied **a first lien** as clearly as if words to that effect had been inserted in the agreement itself. In the plain, ordinary and popular sense, **first mortgage means first lien**. When railroad bonds are sold in the open market as first-mortgage bonds all persons understand them to be first liens. **When we speak of lending money on first mortgage, no thought of anything but a first lien is entertained.**

*Appeal of Green*, 97 Pa. 342, 347 (1881) (emphasis added).[6] In fact, Black's Law Dictionary used this excerpt to define "first mortgage" in an earlier edition. Thus, clearly, the common and approved usage of "first" relates to priority and not chronology as the Association maintains.

However, as RMF points out, also critical to this analysis is the point in time at which we look at the liens. The Association and the trial court suggest that we should look at the entire history of the property. RMF maintains that we must look only at the record existing at the time of the sale. We agree with RMF.

We note that the Pennsylvania Mortgage Satisfaction Act ("PMSA"), provides:

> Every mortgagee shall, upon receipt of payment of the entire mortgage obligation ..., present for recording in the office where the mortgage is recorded a duly executed satisfaction piece . . . . The satisfaction piece when recorded **shall forever thereafter discharge, defeat and release the lien and debt of the mortgage**.

21 P.S. § 721-4 (emphasis added). Further, our Supreme Court has stated that "it is fundamental in this state that the rights of all parties at a sheriff's sale of real estate **depend on the record at the time of the sale**." *Colonial Trust Co. v. Lincoln Drive Apartments Corp.*, 149 A. 165, 167 (Pa. 1930).

---

[6] In fact, Black's Law Dictionary used this excerpt to define "first mortgage" in an earlier edition.

Thus, we conclude that the Legislature's use of the word "first mortgage" applies to the first mortgage existing on the record *at the time of sale*. As such, we must reject the trial court's conclusion that "first mortgage" under the UPCA meant the earliest mortgage on the property in its history.

Applying the foregoing to the instant case, we observe that the title report at the time of the sale did not list Morgan Stanley's 2005 mortgage because it had been paid off by Bank of America in 2011 and discharged. Thus, the 2005 mortgage no longer existed as a mortgage of any sort on the property and had no priority at the time of the 2022 sale. Appropriately, at the time of the instant sheriff's sale, the title report listed RMF as the first mortgage because no other mortgage existed on the property.[7] Thus, RMF's mortgage was the "first mortgage" for purposes of the UPCA.

Additionally, RMF's mortgage was recorded in 2011, before the due date of any delinquent assessments on Eventoff's unit, which began in December 2015. Under the UPCA, an association's lien does not become effective until a delinquency arises. *See* 68 Pa.C.S.A. § 5315(a). A homeowner association's lien is not effective upon the recording of the declaration, contrary to the trial court's initial opinion and the Association's argument. Therefore, because RMF's mortgage was recorded before the Associations' lien became effective, the mortgage fell within the exceptions under Section § 5315(b) of the UPCA and had priority.

_____

[7] HUD was listed second.

- 15 -

As a result, RMF's mortgage was unaffected by the sheriff's sale. This is true under the UPCA's general rule in Section § 5315(a) and the broader rule set forth in 42 Pa.C.S.A. § 8152. Consequently, the trial court erred in determining that RMF's mortgage should be divested.

In sum, we conclude that the trial court misinterpreted the meaning of "first mortgage" and erred when it granted the Association's exceptions and ordered that RMF's mortgage was divested.[8] We, therefore, reverse the court's order granting the Association's exceptions to the sheriff's schedule of distribution and direct that RMF's mortgage be reinstated.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2024

---

[8] Because resolution of RMF's second issue resolves this appeal, we need not consider its third issue claiming that its mortgage should not have been divested because RMF did not receive proper notice of the sheriff's sale.