J-A16033-25

2026 PA Super 88

| | | |
|---|---|---|
| MONTGOMERY COUNTY AND OTAR KOSASHVILI | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| JULIETT BARZILAYEVA | : : | No. 1592 EDA 2024 |
| APPEAL OF: JULIETT BARZILAYEVA AND EUGENE ZWICK | : : : | |

Appeal from the Order Entered May 3, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190800558

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KING, J.:                                    **FILED APRIL 30, 2026**

Appellants, Juliett Barzilayeva and Eugene Zwick, appeal from the order entered in the Philadelphia County Court of Common Pleas, which denied their petition to set aside a sheriff's sale.  Due to the unique circumstances of this appeal, we reverse the order denying Appellants' petition.

The trial court opinion set forth the relevant facts and procedural history of this case as follows:

> The action arises from a judgment that was transferred from Montgomery County to Philadelphia County in August 2019. In Montgomery County, Appellant Barzilayeva was convicted of felony theft in 2012,[1] and part of the sentence required payment of restitution to the victim, Otar Kosashvili ("Appellee").  Appellant Barzilayeva was ordered to pay Appellee [$154,876.03].  According to Appellee,

_____

[1] Montgomery County docketed Appellant Barzilayeva's criminal case at CP-46-CR-0009160-2011.

Appellant concealed that she had an ownership interest in the property at issue, 1804 Bainbridge Street [in Philadelphia], during the sentencing in 2012. Upon learning about the property, **Appellee reduced the restitution order to a civil judgment, transferred the judgment to Philadelphia County, and sought to execute and collect on the judgment through Sheriff's Sale of the property.** From the first entry of the judgment in Philadelphia courts, Montgomery County and Appellee have been listed as co-plaintiffs.

Appellee filed three *Praecipes* to Issue Writ of Execution between July 2020 and August 2021. In September 2021, Appellee filed a Motion to Proceed with Sale, which was denied as moot due to the COVID-19 Moratorium on Sheriff's Sales that was set to end in December 2021. After the moratorium was lifted, Appellee filed a new *Praecipe* for Writ of Execution in February 2022.

After a Motion to Postpone Sheriff's Sale was granted, the property was set for sale on July 12, 2022. On July 7, 2022, Appellant Zwick filed an Emergency Petition to Intervene claiming that he has a seventy-five percent (75%) ownership interest in the property, along with a Motion to Postpone. The following day, the Petition to Intervene was granted and the sale was postponed to August 2022. Appellant Zwick filed another Motion to Postpone Sheriff's Sale regarding the August sale date and a Motion to Strike the Writ of Execution. The Motion to Postpone was granted on August 1, 2022, and set the next sale date to October 4, 2022. On September 7, 2022, the Motion to Strike the Writ of Execution was dismissed as procedurally improper and moot. The September 7 Order dismissing the Motion mentioned that the Writ of Execution expired before the Motion was submitted and was never executed.

On July 28, 2023, Appellee filed a *Praecipe* to Reissue the Writ of Execution on the property. Appellants contend that the resulting writ contained an error by not including that only 25% of the property would be sold due to Appellant Zwick's claimed 75% ownership. Appellants have since clarified that they (Ms. Barzilayeva and Mr. Zwick) are joint tenants with a right of survivorship. The Parties disagree as to whether notice of the new Writ of Execution was properly

- 2 -

effectuated at the time of issuance. The property was put up for bidding and sold on the scheduled October 3, 202[3], sale date for $290,000.

\* \* \*

On October 23, 2023, Appellants filed a Motion to Set Aside Sheriff's Sale and Stay All Proceedings. Appellants alleged that Appellee failed to comply with multiple rules about the notice required before the sale could proceed and that the proceeds from the sale were "grossly inadequate." Hearings were held on February 29 and April 11, 2024. On May 3, 2024, [the trial c]ourt denied the Motion.

(Trial Court Opinion, filed 10/28/24, at 1-3) (emphasis added) (footnote omitted).

Appellants timely filed a notice of appeal on Monday, June 3, 2024. On June 5, 2024, the court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants timely filed their Rule 1925(b) statement on June 26, 2024.

Appellants now present nine (9) issues for this Court's review:

[The trial court erred i]n not setting aside the sheriff's sale because … Appellee needed to pursue modification of the ordered statutory relief with the [Montgomery County Court of Common Pleas] prior to seeking other remedies.

The trial court abused its discretion and erred as a matter of law … [i]n that the sheriff's sale on writ #2206-430 was postponed for more than 130 days, new notice and publication were required under the Pennsylvania Rules of Civil Procedure, and: (1) no notice of the date of continued sheriff's sale was filed with the prothonotary at least fifteen days before the continued sale date pursuant to Pa.R.C.P. 3129.3(b)(2)(i)(A) and (2) there is no evidence a certificate of filing with the sheriff confirming the filing of the notice of the date of continued sheriff's sale with the prothonotary occurred pursuant to Pa.R.C.P. 3129.3(b)(2)(i)(B) and

thereby the due process of those with a record interest and those with an unrecorded interest were violated along with the rights of the general public.

Was the actual sale price of the subject property … grossly inadequate and as such should have been set aside?

Did writ #2206-430 fail to comply with Pa.R.C.P. 3129.2?

Did [Appellee] fail to comply with Pa.R.C.P. 3129.1(b)(4)?

Were the due process rights of Appellants violated when the sheriff's sale moved forward when the docket maintained by the Office of Judicial Records gave notice to Appellants and general public the October 3, 2023 sheriff's sale had been postponed?

Did the trial court abuse its discretion in allowing testimonial evidence into the record from a witness that is an attorney for the City of Philadelphia (not a party or representing any party hereto) concerning docket entries related to sheriff's sales when this witness admittedly lacked knowledge of the docket entries in this case?

The [trial] court lacked subject matter jurisdiction over this case because naming Montgomery County, Pennsylvania a party hereto was fictitious where counsel for Appellee … had no authority nor was engaged by Montgomery County, Pennsylvania to proceed on their behalf and therefore based on this deception all writs, orders and/or actions hereto are void?

In that service of the *praecipe* for writ of execution and writ of execution with accompanying affidavit was not perfected (*see* Pa.R.C.P. 3129.1) and thus a strict condition precedent prior to deprivation of one's property rights did not occur whereby set aside was required.

(Appellants' Brief at 4-7) (reordered for purposes of disposition).

We first address Appellants' claim regarding the underlying restitution order from Montgomery County.  Appellants acknowledge that Montgomery

County issued the restitution order in a criminal case against Appellant Barzilayeva, which named Appellee as the victim of a theft. Appellants insist, however, that Appellee "had no authority to add his name … to the certified judgment without seeking leave of court to amend the restitution order, which he could have done." (Appellants' Brief at 36-37). Appellants cite 42 Pa.C.S.A. § 9728, governing the collection of restitution, for the proposition that Montgomery County was the only entity that could place a lien on the real property. Because Appellee did not file a motion to modify the restitution order in Montgomery County, Appellants argue that Appellee violated the statutes governing restitution. On this basis, Appellants conclude that we must reverse the order denying the motion to set aside the sheriff's sale.[2]

_____

[2] In response, Appellee claims that Appellants are attempting to challenge standing by arguing that Appellee's name should not have appeared on the judgment. Appellee maintains that this argument is waived because Appellants "failed to raise the same at the earliest opportunity[.]" (Appellee's Brief at 33). We disagree. "A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." ***Foxfield at Naaman's Creek Homeowner's Association v. Eventoff***, 329 A.3d 1271, 1275 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, 343 A.3d 183 (2025). "A party has standing if he is aggrieved, *i.e.*, he can show a substantial, direct, and immediate interest in the outcome of the litigation." ***Id.*** "Unlike standing, which relates to a party's right to make a legal claim or seek judicial enforcement, subject matter jurisdiction concerns the court's authority to consider cases of a given nature and grant the type of relief requested." ***In re Adoption of Z.S.H.G.***, 34 A.3d 1283, 1289 (Pa.Super. 2011). Here, rather than raising a challenge to standing, Appellants have repeatedly questioned the propriety of the transfer of the judgment for restitution to Philadelphia for the purpose of liquidating Appellant Barzilayeva's real property there. For example, at the first hearing on the motion to set aside sheriff's sale, Appellants' counsel noted:
*(Footnote Continued Next Page)*

Considering recent case law explaining a sentencing court's continuing jurisdiction over restitution orders, we agree.

To dispose of Appellants' claim, we must interpret the statutory scheme governing restitution.

> The objective of all interpretation and construction of statutes is to ascertain and effectuate the legislative intent behind the statute. When the plain language of a statute is clear and free from all ambiguity, it is the best indication of legislative intent.
>
> When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent, including the purpose of the statute and the consequences of a particular interpretation. Furthermore, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute. Lastly, we presume that the legislature did not intend an unreasonable or absurd result.

---

> The [Clerk of Court] is allowed to collect the [restitution] money based upon the order of the judge. If the judge says: You have to pay X amount of dollars each month, I don't know where they have the authority to go in and file a sheriff's sale, and I don't know that Montgomery County contacted [Appellee's counsel] to go and seize a property that was also owned by another person.

(N.T. Hearing, 2/29/24, at 6). Appellants' arguments on appeal continue to question whether the Philadelphia County Court of Common Pleas possessed authority to make the judgment for restitution "attach to property" owned by Appellant Barzilayeva. (Appellants' Brief at 37). Thus, we decline to Appellee's invitation to deem this claim waived. *See Keller v. Bank of New York Mellon*, 212 A.3d 52, 57 (Pa.Super. 2019), *appeal denied*, 656 Pa. 86, 219 A.3d 1104 (2019) (stating: "After the delivery of the sheriff's deed to the purchaser, the only possible attacks are those based on fraud or lack of authority to make the sale").

- 6 -

***A.M.D. on Behalf of A.D. v. T.A.B.***, 178 A.3d 889, 892-93 (Pa.Super. 2018)

(internal citations and quotation marks omitted).

> The Supreme Court has held restitution provisions to be penal in nature. Accordingly, we must construe restitution provisions strictly, interpreting any ambiguity in favor of the defendant. Additionally, when statutes or parts of statutes relate to the same persons or things or to the same class of persons or things, we must construe them together, if possible, as one statute.

***Commonwealth v. Wright***, 2025 PA Super 226, 2025 WL 2813496, at *3

(Pa.Super. October 3, 2025) (internal citations and quotation marks omitted).

Section 1106 of the Crimes Code generally governs the imposition of

restitution for injuries to person or property.

> Section 1106(a) provides that a court shall include restitution as part of the sentence for cases where "property has been stolen, converted or otherwise unlawfully obtained … as a direct result of the crime." 18 Pa.C.S. § 1106(a). Alternatively, the court may impose restitution as a condition of probation under the Sentencing Code. ***See Clark v. Peugh***, 257 A.3d 1260, 1268 (Pa.Super. 2021) (citing 42 Pa.C.S. § 9763(b)(10)). Moreover, … when a court orders restitution as part of the sentence, the court may require compliance with the restitution as "a condition of such probation[.]" 18 Pa.C.S. § 1106(b).
>
> [I]n Section 1106(c)(3), the General Assembly established "an independent cause of action for a defendant to seek a modification of an existing restitution order" from the trial court even after the expiration of the time for modifying or appealing the original sentence. ***Commonwealth v. Gentry***, 101 A.3d 813, 816 (Pa.Super. 2014). Specifically, Section 1106(c)(3) provides as follows:
>
>> **The court may, at any time [or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other**

**agent designated by the county commissioners of the county with the approval of the president judge to collect restitution,] alter or amend any order of restitution** …, provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

18 Pa.C.S. § 1106(c)(3) (emphasis added).

*Id.* at \*3-\*4.

As previously mentioned, Appellee's conduct implicated the procedures for the collection of restitution, "including 42 Pa.C.S. § 9728, which provides for restitution to be treated as a 'judgment.'" *Id.* at \*4. Initially, Section 9728 indicates that restitution is part of the criminal action and shall not be deemed a debt:

**§ 9728. Collection of restitution, reparation, fees, costs, fines and penalties**

**(a)     General rule.—**

(1)    Except as provided in subsection (b)(5), all restitution, reparation, fees, costs, fines and penalties **shall be collected by the county probation department** or other agent designated by the county commissioners of the county with the approval of the president judge of the county for that purpose in any manner provided by law. However, such restitution, reparation, fees, costs, fines and penalties are part of a criminal action or proceeding and shall not be deemed debts. A sentence, pretrial disposition order or order entered under section 6352 (relating to disposition of delinquent child) for restitution, reparation, fees, costs, fines or penalties shall, together with interest and any additional costs that may accrue, be **a judgment in favor of the probation department upon the person or the property of the person sentenced or subject to the order.**

- 8 -

42 Pa.C.S.A. § 9728(a)(1) (emphasis added).

Section 9728(b) explains the procedure for docketing these judgments for restitution:

**(b)    Procedure.—**

(1)    The county clerk of courts shall, upon sentencing, pretrial disposition or other order, transmit to the prothonotary certified copies of all judgments for restitution, reparation, fees, costs, fines and penalties which, in the aggregate, exceed $1,000, and it shall be the duty of each prothonotary to enter and docket the same of record in his office and to index the same as judgments are indexed, without requiring the payment of costs as a condition precedent to the entry thereof.

(2)    The clerk of courts, in consultation with other appropriate governmental agencies, may transmit to the prothonotary of the respective county certified copies of all judgments for restitution, reparation, fees, costs, fines and penalties which, in the aggregate, do not exceed $1,000, and, if so transmitted, it shall be the duty of each prothonotary to enter and docket the same of record in his office and to index the same as judgments are indexed, without requiring the payment of costs as a condition precedent to the entry thereof.

(3)    The county clerk of courts shall, upon sentencing, pretrial disposition or other order, transmit to the Department of Probation of the respective county or other agent designated by the county commissioners of the county with the approval of the president judge of the county and to the county correctional facility to which the offender has been sentenced or to the Department of Corrections, whichever is appropriate, copies of all orders for restitution and amendments or alterations thereto, reparation, fees, costs, fines and penalties.  This paragraph also applies in the case of costs imposed under section 9721(c.1) (relating to sentencing generally).

42 Pa.C.S.A. § 9728(b)(1)-(3). "The total amount for which the person is liable pursuant to this section may be entered as a judgment upon the person or the property of the person sentenced or ordered[.]" 42 Pa.C.S.A. § 9728(b)(4).

> Notably, in providing that restitution shall be a judgment, the General Assembly did not revoke its prior express statement that restitution was part of a criminal action or state that the judgment undermined the sentencing court's continued jurisdiction over the restitution portion of the sentence.

*Wright, supra* at *4.

We also observe that Appellee wanted to use Appellant Barzilayeva's real property to satisfy the restitution obligation. "Where the defendant owns assets in an amount sufficient to make restitution, he or she may be called upon to sell or borrow on the security of those assets and use the proceeds to make restitution." *Commonwealth v. Madron*, 488 A.2d 331, 332 (Pa.Super. 1985). "The rights of a victim to be made whole will not be made subservient to the criminal's desire to retain an unencumbered title to capital assets." *Id.* Nevertheless, the statutory scheme governing restitution does not expressly permit the type of self-help Appellee undertook in this case. Rather, Section 9728(e), which contemplates the need to preserve a defendant's assets for payment of restitution, authorizes the Commonwealth to act on a victim's behalf:

> **Upon application of the Commonwealth**, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond or take any other action

to preserve the availability of property which may be necessary to satisfy an anticipated restitution order under this section:

(1)   upon the filing of a criminal complaint, information or indictment charging a criminal violation or a petition alleging delinquency for which restitution may be ordered and alleging that the property with respect to which the order is sought appears to be necessary to satisfy such restitution order and judgment; and

(2)   if, after notice to persons appearing to have an interest in the property and an opportunity for a hearing, the court determines that:

(i)   there is a substantial probability that:

(A)   the Commonwealth will prevail on the underlying criminal charges or allegation of delinquency;

(B)   restitution will be ordered exceeding $10,000 in value;

(C)   the property appears to be necessary to satisfy such restitution order; and

(D)   failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for payment of the anticipated restitution order; and

(ii)   the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

42 Pa.C.S.A. § 9728(e) (emphasis added).

Appellee's actions highlight the tension between the criminal and civil elements involved in the imposition and payment of restitution.  Regardless of the entry of a judgment, however, other statutes evince the continuing

criminal nature of restitution proceedings.

> For example, Section 9730(b), addressing the payment of court costs, restitution, and fines, directs that when a defendant defaults on payment of these amounts, the issuing authority, ... may conduct a hearing to determine whether the defendant is financially able to pay and to determine the appropriate next steps. Similarly, a judge of the court of common pleas having jurisdiction over the defendant has the authority to order private collection agencies to cease collection efforts. Moreover, the statutes task each county's probation department, rather than a civil entity, with tracking the restitution payments.
>
> **Thus, while the statutes do not expressly address whether a criminal or civil court has jurisdiction over "a judgment" of restitution, we glean from the detailed statutory procedure that the General Assembly intended for the sentencing court to maintain jurisdiction over the restitution to perform the statutorily mandated oversight of the collection process.** Indeed, this court previously explained the benefit of providing the original sentencing court with modification authority as a proceeding in the sentencing court allows the defendant to appear before the court that originally imposed the restitution and is familiar with the facts of the case and the relevant statutory framework.

*Wright, supra* at *5 (emphasis added) (internal citations, footnote, and quotation marks omitted).

Additional case law emphasizes the criminal nature of restitution. "The primary purpose of restitution is not to compensate the victim but to rehabilitate the offender." *Commonwealth v. Corbin*, 317 A.3d 648, 653 (Pa.Super. 2024).

> [T]he primary purpose of restitution is to rehabilitate the offender by impressing on [her] the fact that [her] actions damaged the victim. In the end, restitution is not simply an award of damages, but, rather, a sentence. The amount of

- 12 -

restitution set by the court is related to the amount of damage sustained by the victim, but restitution is not itself a civil damage award.  It is true that restitution helps the victim, but this fact is secondary to the reality that restitution is an aspect of sentencing imposed by the court on an offender in order to facilitate the administration of criminal justice.

*Id.* (quoting *Commonwealth v. Brown*, 956 A.2d 992, 996 (Pa.Super. 2008)) (internal citations and quotation marks omitted).

Various characteristics of restitution further illustrate that its true nature is that of a criminal sanction.  For example, while a crime victim certainly may ask the district attorney to seek restitution, it is the district attorney who has the authority to present that request to the court.[3]  Moreover, an order of restitution does not create a creditor-debtor relationship between the victim and the offender.   … [R]estitution can only be enforced by the criminal court, just as penalties of incarceration or probation are within the court's exclusive purview.

*Commonwealth v. Pleger*, 934 A.2d 715, 720 (Pa.Super. 2007) (internal citations omitted).

_____

[3] We acknowledge the panoply of rights that our legislature has bestowed upon victims of crime through the Crime Victims Act, 18 P.S. §§ 11.101-11.5102.  Relevant to restitution, however, the Act merely provides that victims have the right

[t]o be restored, to the extent possible, to the precrime economic status through the provision of restitution, compensation and the expeditious return of property which is seized as evidence in the case when in the judgment of the prosecutor the evidence is no longer needed for prosecution of the case.

18 P.S. §§ 11.201(6).  As we will discuss *infra*, we do not read this provision so broadly as to allow victims to engage in the type of self-help at issue in this case.

Instantly, Appellant Barzilayeva entered a guilty plea to theft by unlawful taking in Montgomery County. A Montgomery County jurist imposed a judgment of sentence in 2012. As a condition of her sentence, the court ordered Appellant Barzilayeva to pay restitution. The restitution order specifically identified Appellee as the victim, and it provided a restitution amount of $154,876.03.

Years later, Appellee learned about Appellant Barzilayeva's ownership interest in the Philadelphia property. Believing this property could satisfy Appellant Barzilayeva's restitution obligation, Appellee took steps to attach the property to the restitution judgment. Initially, a *praecipe* to enter judgment was filed in Montgomery County on April 30, 2019.[4] The *praecipe* requested that the Prothonotary "[e]nter judgment in favor of Plaintiff, Clerk of Court, against Defendant Juliett Barzilayeva" in the amount of $153,926.03. (*Praecipe*, filed 4/30/19). The *praecipe* also included a notation, signed by the Prothonotary, indicating the entry of judgment against Appellant Barzilayeva on May 6, 2019. On August 7, 2019, Appellee filed the certified judgment, as well as a *praecipe* to enter judgment, in Philadelphia County.[5]

_____

[4] Although the *praecipe* listed the docket number associated with Appellant Barzilayeva's criminal case, the *praecipe* modified the caption to "Clerk of Court v. Juliett Barzilayeva." (*Praecipe*, dated 4/30/19).

[5] The certified judgment listed Montgomery County as the plaintiff with no reference to Appellee. Nevertheless, the civil cover sheet filed with the certified judgment listed both Montgomery County and Appellee as plaintiffs.

- 14 -

Thereafter, Appellee engaged in his repeated attempts to collect on the judgment through the forced sale of Appellant Barzilayeva's real property.

Here, Appellee acted *sua sponte* where the 2012 restitution order remained unsatisfied. Rather than taking matters into his own hands, however, Appellee needed to recognize that the sentencing court for Appellant Barzilayeva's criminal case retained the express authority to alter or amend the restitution order. **See** 18 Pa.C.S.A. § 1106(c)(3). We believe that Appellee's actions—formalizing entry of the civil judgment, transferring the civil judgment to another county, adding his name to the judgment, and targeting Appellant Barzilayeva's real property—amounted to a request to alter or amend the restitution order. We now hold that Appellee could not request such an amendment. Instead, Appellee should have asked the district attorney to take any necessary actions on his behalf.[6] **See** 18 Pa.C.S. § 1106(c)(3); 42 Pa.C.S.A. § 9728(e).

Regarding Appellee's August 7, 2019 filing of the *praecipe* to enter judgment in Philadelphia County, Section 9728(b)(1) makes clear that the clerk of courts is the only entity permitted to transmit certified copies of all

---

[6] Although we characterize Appellee's actions as an attempt at an amendment of the restitution order, we acknowledge that Section 1106(g) preserves a victim's right to pursue private remedies. **See** 18 Pa.C.S.A. § 1106(g) (stating: "No judgment or order of restitution shall debar the victim, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment").

- 15 -

judgments for restitution exceeding $1,000 to the prothonotary. Because the clerk of courts already filed a *praecipe* to enter judgment in Montgomery County, we believe that Appellee lacked authority to repeat this process in Philadelphia. Therefore, the judgment entered in Philadelphia was void *ab initio*, and we must strike it. **See Oswald v. WB Public Square Associates, LLC**, 80 A.3d 790, 797 (Pa.Super. 2013) (stating: "judgments which are void *ab initio* are those which the prothonotary was without authority to enter in the first place," and judgment that is void *ab initio* must be stricken without regard to passage of time).

We reiterate that the General Assembly intended for the sentencing court to maintain jurisdiction over the restitution order to perform the statutorily mandated oversight of the collection process. **See Wright, supra**. As such, we refuse to endorse the procedure Appellee employed here, which attempted to end-run the statutes governing the imposition and collection of restitution. Because the Montgomery County Court of Common Pleas maintained jurisdiction over the restitution matter, we must grant relief by reversing the Philadelphia County order denying Appellants' petition to set aside the sheriff's sale.[7] **See** 18 Pa.C.S.A. § 1106(c)(3); **Wright, supra**. We also strike the judgment entered in Philadelphia County as void *ab initio*. **See Oswald, supra**.

_____

[7] Based on our disposition, we decline to address Appellants' remaining issues.

Order reversed.  Judgment stricken.  Jurisdiction is relinquished.

President Judge Lazarus joins this Opinion.

Judge Kunselman files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/30/2026