J-A14022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| USAA FEDERAL SAVINGS BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEX BELFI | : | |
| | : | |
| Appellant | : | No. 913 EDA 2024 |

Appeal from the Order Entered March 11, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190100496

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 16, 2025**

Appellant Alex Belfi appeals *pro se* from the order granting summary judgment in favor of Appellee USAA Federal Savings Bank[1] in the underlying residential mortgage foreclosure action. Appellant raises numerous claims related to Appellee's standing to bring this action, Appellee's failure to join indispensable parties, and the trial court's failure to consider Appellant's defenses and counterclaims. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> [Appellee] filed a complaint in mortgage foreclosure on January 10, 2019. The complaint included the following allegations: On

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In his *praecipe* for entry of appearance, Appellee's counsel erroneously identified Appellee as "USAA Federal Savings Bank Nationstar Mortgage, LLC." *See* Appellee's Brief at 4 n.2. We have corrected the caption accordingly.

June 16, 2016, [Appellant] entered into a mortgage (the "Mortgage") for a property at 1502 East Moyamensing Avenue in Philadelphia, PA (the "Property"). Complaint ¶ 1, 3 & Ex. A. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for [Appellee]. *Id.* ¶ 1(a). The Mortgage provided that MERS "is a separate corporation that is acting solely as a nominee for Lender [*i.e.*, Appellee] and Lender's successors and assigns." *Id.* Ex. A ¶ C. . . .

* * *

[Appellant] also executed a promissory note (the "Note") promising to pay $400,000 to the lender, [Appellee]. Complaint ¶ 4 & Ex. B. In 2018, MERS assigned the Mortgage to [Appellee], Complaint ¶ 1(d), making [Appellee] "the current holder of the mortgage by operation of law." *Id.* ¶ 2. The Mortgage was in default, the complaint alleged, with $389,518.26 owed as of October 31, 2018. *Id.* ¶ 8. [Appellee] sought judgment *in rem* in the amount set forth in the complaint, along with additional charges and fees.

[Appellant], representing himself, filed a document on May 16, 2019, captioned "memorandum and counterclaim in opposition of [Appellee's] complaint; failure to make service upon [Appellant]" (the "Counterclaim"). In this document, [Appellant] alleged that he had not been served properly. . . .

* * *

He explained that a third party had defrauded him, leading to litigation in federal court, which somehow caused him to become delinquent on his mortgage payments. . . . [Appellee] filed an answer and new matter to the counterclaim on October 15, 2019. [Appellant] did not respond to the new matter.

[Appellant] answered the complaint on October 1, 2019. He admitted that the Mortgage and its assignment existed and had been publicly recorded, Answer ¶ 1; that he lived at and owned the Property, which was the property described in the Mortgage, *Id.* ¶¶ 3, 5-6; and that a notice pursuant to the Homeowners' Emergency Mortgage Assistance Act of 1983, 35 P.S. § 1680.402c, *et seq.* (the "Act 91 Notice") had been sent to him, *Id.* ¶ 11. [However, Appellant denied that the Act 91 Notice contained the information required by law. *Id.* at ¶ 12.] He generally denied the allegation that he had fallen behind on his payments, stating, "strict proof thereof is demanded at trial." *Id.*

- 2 -

¶ 7. He also denied knowledge or information sufficient to respond to the allegations setting forth the principal, interest, and fees that he allegedly owed, again demanding "strict proof." *Id.* ¶¶ 7-10. Finally, [Appellant] denied all allegations relating to the legal effect of the Mortgage, assignment, and Note. For example, he denied that [Appellee] was the holder of the Mortgage, that the Property was subject to the Mortgage, that the Note was evidence of a debt, that he was a mortgagor, and that the Act 91 Notice complied with Act 91. *Id.* ¶¶ 2-4, 6, 12. [Appellant] did not explain any of these denials, and did not file [a] new matter. Importantly, neither the counterclaim nor the answer asserted any of the defenses that [Appellant] would go on to raise nearly five years later, after [Appellee] moved for summary judgment.

[Appellant] then attempted to remove the case to federal court. The federal court remanded it, holding that as a resident of the forum state, [Appellant] was not entitled to removal based on diversity jurisdiction. . . . On March 16, 2023, this court issued a case management order assigning the case to the February 2024 trial pool. The case management order provided, among other things, that "All **Discovery** . . . shall be completed no later than **NOVEMBER 6, 2023**," and "**Dispositive motions** must be filed no later than **DECEMBER 4, 2023**" (emphasis in original).

[Appellant] did not serve discovery or file any discovery motions. [Appellee] served discovery on [Appellant] and did not receive a response.

On December 4, 2023, the dispositive motions deadline, [Appellee] filed a motion for summary judgment ("[Appellee] MSJ"). In its motion, [Appellee] contended that there were no genuine issues of material fact . . . .

\* \* \*

[Appellee] provided evidence of each of these facts in the form of documents and an affidavit. [Appellee] also relied on [Appellant's] express and tacit admissions, including his failure to respond with specificity to the material allegations of [Appellee's] complaint and his failure to answer [Appellee's] discovery, which included requests for admissions. [Appellee] also sought summary judgment on [Appellant's] counterclaim, arguing that the counterclaim did not state a claim upon which relief could be granted and that [Appellant's] failure to respond to [Appellee's] new matter to the counterclaim eliminated any potential issues of fact.

- 3 -

[Appellant] did not respond to the numbered paragraphs of [Appellee's] motion. Instead, on December 5, 2023, he filed a "response and cross-motion" ("MSJ Response"). This document did not contradict any of the facts set forth in [Appellee's] motion. Instead, it was a free-form discussion of issues that [Appellant] claimed to find suspicious or questionable. For example, [Appellant] argued that [Appellee] lacked standing because it was using a fictitious name, that [Appellee] was not a real party in interest because its name did not appear on [Appellant's] account statements, that the United States Department of Veteran Affairs ("VA") should have been notified of the action, that the mortgage debt had been discharged in bankruptcy, that [Appellant] had changed addresses and had not received [Appellee's] discovery requests, that the assignment of the Mortgage was defective, that [Appellant] questioned certain line items in [Appellee's] calculation of the amounts owed, that the assignment of the Mortgage violated an alleged "Veteran Loan Guaranty Agreement," that the Act 91 Notice was defective, and that making electronic copies of the Note violated the law. This [MSJ] Response was verified, but did not include an affidavit. It attached a handful of unauthenticated documents—mortgage statements, a change of address form from the U.S. Post Office, the alleged indenture and deed from [Appellant's] purchase of the Property, and some internet printouts. None of these controverted the evidence set forth in [Appellee's] motion.

Although the deadline for dispositive motions had passed, [Appellant] then launched a barrage of motions and other filings, each of which added new legal arguments, alleged new facts, and attached new (unverified and unauthenticated) documents[, including a motion to compel Appellee to answer discovery.]

\* \* \*

On January 31, 2024, the Honorable Joshua Roberts signed an order granting [Appellant's] motion for extraordinary relief and extending all deadlines by thirty days. . . . [Appellant] did not make any attempt to conduct additional discovery in the thirty days following the order. He also did not respond to the discovery requests that [Appellee] had served before the discovery deadline (which he claimed not to have known about until he reviewed [Appellee's] motion for summary judgment). . . . On March 4, 2024, [Appellant] refiled the motion to compel that this court had administratively dismissed.

- 4 -

Trial Ct. Op., 12/31/24, at 2-8 (headers, footnotes, and some citations omitted and some formatting altered).

The trial court entered orders denying Appellant's motion to dismiss and motion for summary judgment on March 8, 2024. On March 11, 2024,[2] the trial court entered an order granting Appellee's motion for summary judgment. Appellant then filed a timely notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises twenty issues,[3] which we reorder and restate as follows:

1. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment because there

_____

[2] The trial court's order is dated March 8, 2024, but was docketed and served on the parties on March 11, 2024. **See** Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); **see also** Pa.R.Civ.P. 236. We have amended the caption accordingly.

[3] We refer to the oft-cited quote from the late Judge Aldisert of the Third Circuit:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court, it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors . . . When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

**Commonwealth v. Lutes**, 793 A.2d 949, 955 n.1 (Pa. Super. 2002) (citations omitted).

was still a remaining issue of material fact related to [Appellant's] allegation that [Appellee] was not the owner of the note, therefore, the complaint did not set forth a cause of action or show [Appellee] was the real party in interest?

2. Did the trial court err in in determining that [Appellee] was the note holder and mortgagee, despite [Appellant] being the note holder, holding the original blue ink signed promissory note?

3. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment because [Appellee] is operating without a mortgage license pursuant to 7 Pa.C.S. § 6101 *et seq.*

4. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment because there was still an issue of material fact concerning the faulty verification that was attached to the complaint and summary judgment?

5. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment because there was still an issue of material fact that [Appellee] failed to adhere to the VA Servicing guidelines?

6. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] counterclaims with prejudice when the counterclaims filed in federal court, case no. 2-19-cv-03607, were the governing counterclaims?

7. Did the trial court commit a reversible error by granting [Appellee's] motion for summary judgment because of the then-remaining issue of material fact that there had been no transfer of the note to [Appellee] from the original lender to provide a cause of action for [Appellee] to have filed the complaint?

8. Did the trial court commit a reversible error when it granted [Appellee's] motion for summary judgment, because of the then remaining issue of material fact concerning the required power of attorney in reference to MERS, as a nominee, which was not filed of record before the complaint was filed, and therefore, the complaint did not set forth a cause of action?

9. Did the trial court err in not dismissing the action due to [Appellee's] lack of registration as its fictitious name?

10. Did the trial court err in not joining Mortgage Electronic Registration System, Inc (MERS) as an indispensable party?

11. Can MERS, as a nominee of a mortgage lender, holding only legal title to the mortgage but not holding the correlative promissory note, exercise the statutory power of sale, foreclose on the mortgaged property and transfer interest?

12. Did the trial court err in determining [Appellee's] Act 91 [notice] was not defective.

13. Did the court err in granting [Appellee's] motion for summary judgment when matters of public record directly challenge [Appellee's] standing that they "no longer had any immediate, direct pecuniary or substantial interest in the real estate or the *in-rem* mortgage foreclosure action."

14. Should the VA be joined as an indispensable party as it has guaranteed the loan secured by the mortgage?

15. Did Omar Basped, acting as both the assignee and assignor, have the authority to assign [Appellant's] mortgage from MERS to [Appellee]?

16. Did the trial court err in granting [Appellee's] motion for summary judgment when [Appellee] did not respond to discovery requests and motions to compel were still outstanding?

17. Did [Appellee] violate 1999 Act 69 § 901 by converting a paper Note into an electronic PDF?

18. Is [Appellant] at risk of double jeopardy, given multiple Notes exist for the same Property and it was securitized?

19. Does Bank of New York Mellon also have the right to foreclose along with the investors of the Ginnie Mae pool which his loan was securitized into?

20. Did the trial court err in granting [Appellee's] motion for summary judgment against the VA memorandum, Circular 26-23-25, which postpones foreclosures until May 31, 2024[?]

Appellant's Brief at 10-17 (footnotes omitted and formatting altered).[4],[5]

**Waiver**

Before we address the merits of Appellant's claims, we must first determine if he has preserved his issues for appeal. This Court may raise this issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

Rule of Civil Procedure 1028 provides, in pertinent part, as follows:

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

---

[4] Appellant has not presented any argument in support of his claim that the trial court erred by not complying with the VA Circular 26-23-25 in his appellate brief. We conclude that Appellant has abandoned this issue, and, therefore, it is waived. **See In re D.N.G.**, 230 A.3d 361, 363 n.2 (Pa. Super. 2020) (stating that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted and some formatting altered)).

[5] We note that in his reply brief, Appellant argues, for the first time, that the securitization of the mortgage was the result of fraud; the affiant who signed Appellee's affidavit in support of its motion for summary judgment lacked personal knowledge of the amount due; and that Appellant has new evidence related to Appellee's standing from a separate quite title action. **See** Appellant's Reply Brief at 15-16, 21 (unpaginated). Our Supreme Court has explained that "an appellant is prohibited from raising new issues in a reply brief." **Reginelli v. Boggs**, 181 A.3d 293, 307 n.15 (Pa. 2018) (citation omitted)). Therefore, these issues are waived. **See id.**

(1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;

* * *

(5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action[.]

Pa.R.Civ.P. 1028(a)(1), (5).

Rule of Civil Procedure 1030 states, in relevant part, "all affirmative defenses . . . shall be pleaded in a responsive pleading under the heading 'New Matter'. A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading." Pa.R.Civ.P. 1030(a).

Additionally, Rule 1032 provides, in relevant part: "A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), . . . the defense of failure to join an indispensable party[.]" Pa.R.Civ.P. 1032(a). It is well established that lack of standing must be raised at the earliest opportunity in either preliminary objections or in an answer. *See Foxfield at Naaman's Creek Homeowner's Ass'n v. Eventoff*, 329 A.3d 1271, 1275 (Pa. Super. 2024); *see also Erie Indem. Co. v. Coal Operators Cas. Co.*, 272 A.2d 465, 467 (Pa. 1971) (stating that "[t]he issue of incapacity to sue is waived unless it is specifically raised in the form of a preliminary objection or in the answer to the complaint" (citations omitted)). Further, a claim that the bank failed to comply with the servicing

provisions of the VA Lenders Handbook may be raised as an equitable defense in a new matter. *See generally Union Nat'l Bank of Little Rock v. Cobbs*, 567 A.2d 719, 720 (Pa. Super. 1989) (explaining that the defendant "asserted in [his] new matter that a VA mortgagee who does not service a mortgage in accordance with the VA Lenders Handbook is barred on equitable grounds from foreclosing").

Further, this Court has explained that "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Moranko v. Downs Racing, LP*, 118 A.3d 1111, 1115-16 (Pa. Super. 2015) (*en banc*) (citations omitted and some formatting altered); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Lastly, it is well-established:

Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*Norman for Estate of Shearlds v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1118-19 (Pa. Super. 2019) (citation omitted).

Here, the trial court explained:

Throughout this litigation, [Appellant] failed to comply with the basic Rules of Civil Procedure. He left pleadings and discovery unanswered, missed deadlines, filed repetitive, scattershot documents not permitted under the rules, and made untimely allegations that he never backed up with any record evidence.

This conduct made it very difficult for [Appellee] to respond to his filings and for this court to assess them. As discussed below, [Appellant's] procedural missteps were so serious that they waived his arguments.

[Appellant's] *pro se* status does not excuse his flouting of court rules. As the Superior Court explained in ***Jones v. Rudenstein***,

> [the plaintiff] apparently labors under the false assumption that by proceeding *pro se* he is absolved of all responsibility to comply with procedural rules, and that the appellee and/or the court had some affirmative duty to walk him through the procedural requirements, or to ignore the procedural requirements, in order to reach the merits of his claim. Such is not the case. The United States Supreme Court has explained: The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.

585 A.2d 520, 522 (Pa. Super. 1991) (quoting ***Farretta v. California***, [422 U.S. 806, 834 n.46,] 95 S.Ct. 2525, 254[1] n.46 (1975)). From his filings, it appears that [Appellant] is a sophisticated person who is capable of reviewing legal documents and doing basic legal research. He has been able to follow court procedures when he cares to do so; he must be held responsible when he declines to follow them.

[Appellant] filed his motion to dismiss long after the court's deadline for dispositive motions. For this reason alone, this court did not err in denying the motion.

Moreover, [Appellant] had long since waived all the arguments he made in the motion. [Appellant] argued that [Appellee] did not have standing to sue, that it was not permitted to sue because it was using a fictitious name, and that [Appellee] had failed to allege that it complied with federal regulations involving notice to the VA. The standing and fictional name arguments implicate [Appellee's] capacity to sue, a defense that must be raised either in preliminary objections or in an answer and new matter. ***See*** Pa.R.Civ.P. 1028(a)(5) ("lack of capacity to sue" may be raised in preliminary objections); ***Five Star Bank v. Chipego***, 312 A.3d 910, 918 (Pa. Super. 2024) ("Parties . . . may challenge standing either in preliminary objections or in the answer to the complaint."). [Appellant's] assertion that [Appellee] did not plead that it had notified the VA should have been raised in preliminary

- 11 -

objections as a "failure of a pleading to conform to law or rule of court," Pa.R.Civ.P. 1028(a)(2). Because [Appellant] did not assert any of these defenses in preliminary objections or in his answer, he waived them. *See* Pa.R.Civ.P. 1032(a).

Trial Ct. Op. at 12-13 (header omitted and some formatting altered); *see also id.* at 14-16 (concluding that Appellant waived his claims because his responses to Appellee's motion for summary judgment did not comply with the Pennsylvania Rules of Civil Procedure and the Philadelphia Local Rules of Civil Procedure and because Appellant failed to submit affidavits or other record evidence in support of his factual allegations).

Based on our review of the record, we agree with the trial court that Appellant has waived his claims related to Appellee's standing to bring this action,[6] and defects in the complaint because Appellant failed to raise these claims either in preliminary objections or in his answer and new matter. *See Erie Indem.*, 272 A.2d at 467; *Foxfield*, 329 A.3d at 1275; Pa.R.Civ.P. 1032(a); Pa.R.A.P. 302(a). Likewise, we conclude that Appellant has waived his claims related to whether Appellee has a mortgage license, Appellant's counterclaims, and Appellant's claim that the transfer of the securitized note creates a risk of double jeopardy because Appellant failed to raise them in his response to Appellee's motion for summary judgment. *See Moranko*, 118 A.3d at 1115-16; Pa.R.A.P. 302(a). Lastly, we agree with the trial court that

_____

[6] Even if Appellant's claims related to Appellee's standing to sue and Appellee's possession of the Note and Mortgage were not waived, we would affirm on the basis of the trial court's opinion. *See* Trial Ct. Op. at 11-12, 17 (concluding that Appellee is the current holder of the Note and the Mortgage).

Appellant's *pro se* status does not excuse Appellant from complying with the applicable court rules.[7]  ***See Norman***, 208 A.3d at 1118-19; ***Jones***, 585 A.2d at 522.

We turn to the merits of the claims that Appellant has preserved for appeal and/or are non-waivable.

### Failure to Join Indispensable Parties

Appellant has raised two claims related to the failure to join indispensable parties; therefore, we discuss them together.  First, Appellant argues that the trial court erred by not joining MERS as an indispensable party because "MERS's role as a nominee and its purported assignment of the mortgage to [Appellee] raise significant issues that cannot be resolved without MERS's participation."  Appellant's Brief at 62.  Appellant essentially challenges MERS's legal authority to assign the mortgage and contends that without joining MERS, the trial court cannot fully and adjudicate the issues in this matter.  ***Id.*** at 63.

Next Appellant argues that the VA is an indispensable party because it has guaranteed the loan secured by the mortgage.  ***Id.*** at 74-76.  Appellant claims that the VA has a financial interest in the outcome of this action because it has guaranteed the loan and is obligated to reimburse the lender losses

_____

[7] To the extent Appellant argues that as a *pro se* litigant he is entitled to a certain amount of leeway and this Court should decline to find his issues waived when Appellant made a good faith effort to comply with procedural rules, we note that the cases Appellant has cited do not stand for that proposition.  ***See*** Appellant's Reply Brief at 17-18, 21 (unpaginated).

incurred due to a default. ***Id.*** at 74. Appellant also contends that this action affects the VA's financial and regulatory interests, namely whether the lender complied with VA servicing guidelines. ***Id.*** at 75.

Our standard of review for summary judgment is well settled:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court.

An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Sampathkumar v. Chase Home Fin., LLC***, 241 A.3d 1122, 1144 (Pa. Super. 2020) (citation omitted and formatting altered). Further, "[i]t is well-settled that we may affirm the trial court's order on any valid basis." ***Seneca Res. Corp. v. S & T Bank***, 122 A.3d 374, 387 n.13 (Pa. Super. 2015) (citation and quotation marks omitted).

"The absence of an indispensable party goes absolutely to the court's jurisdiction." ***McCann v. SMB Investments, LLC***, 338 A.3d 138, 150 (Pa.

Super. 2025) (citation omitted). "Because jurisdiction is a pure question of law, our standard of review is *de novo*, and our scope of review is plenary." *Id.* at 145 (citation omitted). Further, "[i]f an indispensable party is not joined, a court is without jurisdiction to decide the matter. The absence of an indispensable party renders any order or decree of the court null and void. The issue of the failure to join an indispensable party cannot be waived." *Id.* at 150 (citation and quotation marks omitted).

> This Court has explained:
>
> "[A] party is indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'" *City of Phila. v. Commonwealth*, 838 A.2d 566, 581 (Pa. 2003). If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.
>
> > 1. Do absent parties have a right or an interest related to the claim?
> >
> > 2. If so, what is the nature of that right or interest?
> >
> > 3. Is that right or interest essential to the merits of the issue?
> >
> > 4. Can justice be afforded without violating the due process rights of absent parties?
>
> "In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.'" *Pa. State Educ. Ass'n v. Commonwealth*, 50 A.3d 1263, 1277 (Pa. 2012).

*Orman v. Mortgage I.T.*, 118 A.3d 403, 406-07 (Pa. Super. 2015) (some citations omitted and formatting altered).

"The holder of a mortgage has the right, upon default, to bring a foreclosure action." ***Bank of Am., N.A. v. Gibson***, 102 A.3d 462, 464 (Pa. Super. 2014) (citation omitted); ***see also*** Pa.R.Civ.P. 1147(a)(1) (requiring that the complaint identify the parties to the mortgage and any assignments of the mortgage).

> Pennsylvania Rules of Civil Procedure 1141 [to 1150] govern actions for mortgage foreclosure. Rule 1141(a) provides that an action at law to foreclose a mortgage upon any estate, leasehold or interest in land shall not include an action to enforce a personal liability. It is well-established that an action in mortgage foreclosure is strictly *in rem* and thus may not include an *in personam* action to enforce personal liability. . . .
>
> Moreover, this court has held that because a mortgage foreclosure action is strictly "*de terris*" in nature, neither a mortgagee-plaintiff nor a mortgagor-defendant can join a party who has no interest in the controverted property.

***Newtown Vill. P'ship v. Kimmel***, 621 A.2d 1036, 1037 (Pa. Super. 1993) (citations omitted).

Rule 1144 of the Pennsylvania Civil Procedure requires that a plaintiff in a mortgage foreclosure action to name as defendants "(1) the mortgagor; (2) the personal representative, heir or devisee of a deceased mortgagor, if known; and (3) the real owner of the property, or if the real owner is unknown, the grantee in the last recorded deed." Pa.R.Civ.P. 1144(a).

Lastly, in the event of a default by the borrower on a loan guaranteed by the VA, the VA "**may** . . . pay to [the holder of the loan] the guaranty not in excess of the pro rata portion of the amount originally guaranteed." 38 U.S.C. § 3732(a)(1). The VA **may** also choose to "pay the holder of a loan

guaranteed under this chapter an amount necessary to avoid the foreclosure of such loan[.]" *Id.* § 3732(a)(2)(A).

The trial court did not address Appellant's claims that MERS and the VA were indispensable parties. Rather, the trial court addressed Appellant's claims regarding MERS as a challenge to the validity of the assignment. *See* Trial Ct. Op. at 18. Further, the trial court concluded that "[a]lthough [Appellant] provided one document suggesting that he applied for a VA guarant[y] this court has found no guaranty agreement, or any other evidence that a guarant[y] was made or that it had any particular terms and conditions, in any of [Appellant's] filings." *Id.* at 20.

Additionally, the trial court explained:

> There is no genuine issue of material fact as to whether [Appellee] has the right to enforce the Note. The Note was issued to [Appellee] as the original lender, and [Appellee] provided an affidavit and documentation confirming that it continues to hold the Note. [Appellant] has provided no record evidence to the contrary.

Trial Ct. Op. at 17; *see also id.* at 2-5 (explaining that MERS was the mortgagee as Appellee's nominee and MERS subsequently assigned the mortgage to Appellee).

Based on our review of the record, we discern no error of law by the trial court in granting Appellee's motion for summary judgment. *See Sampathkumar*, 241 A.3d at 1144; *see also McCann*, 338 A.3d at 150. Neither MERS nor the VA were indispensable parties to this action. As the trial court explained, Appellee is the holder of the Note and the Mortgage following

an assignment from MERS. MERS does not have any right or interest related to Appellee's foreclosure action because MERS does not hold the Note or the Mortgage (and neither party has asserted MERS has any ownership interest in the Property). **See Gibson**, 102 A.3d at 464; **Newtown Vill.**, 621 A.2d at 1037; Pa.R.Civ.P. 1144(a). Therefore, MERS is not an indispensable party because MERS does not have any right or interest in the mortgage that would be prejudiced by any decision in this case. **See Orman**, 118 A.3d at 406-07.

Further, as stated above, the trial court concluded that Appellant failed to present evidence establishing that the VA had guaranteed the loan. **See** Trial Ct. Op. at 20. Based on our review of the record, we agree. Appellant attached a copy of a VA certificate of eligibility for loan guaranty benefits dated December 19, 2023 to his January 23, 2024 "reply in further support of [Appellant's] motion for extraordinary relief" (Reply in Supp.). **See** Reply in Supp., 1/23/24, Ex. 5. While this document indicates that the loan in this matter is **eligible** for a VA guaranty up to $100,000, it does not establish that the VA has taken any steps to guarantee this loan. **Cf.** 38 U.S.C. § 3732(a)(1)-(2). In any event, the VA is neither the mortgagor nor the real owner of the Property; therefore, the VA is not a proper defendant pursuant to Pa.R.Civ.P. 1144(a). Accordingly, the VA is not an indispensable party because the VA does not have any right or interest in the mortgage that would be prejudiced by any decision in this case. **See Orman**, 118 A.3d at 406-07. For these reasons, Appellant is not entitled to relief on his claims related to the failure to join indispensable parties.

**Grant of Summary Judgment was Premature**

Next Appellant argues that the trial court erred by denying his discovery requests and motion to compel discovery related to Appellee's possession of the note and the assignment of the Note and Mortgage to Appellee. Appellant's Brief at 77-78; *see also* Appellant's Reply Brief at 21 (unpaginated).

Following our review of the record, the parties' briefs, and relevant legal authority, we discern no abuse of discretion by the trial court. *See Sampathkumar*, 241 A.3d at 1144. Specifically, we agree with the trial court that Appellant has not shown that he was duly diligent in seeking the material requested in discovery. *See* Trial Ct. Op. at 21-22. Additionally, we note that the trial court also concluded that Appellant's claims related to the assignment of the mortgage are meritless because a borrower lacks standing to challenge the validity of the assignment of the mortgage. *See id.* at 18. Therefore, Appellant cannot establish that the requested discovery would have aided in the establishment of any material fact. *See Manzetti v. Mercy Hosp. of Pittsburgh*, 776 A.2d 938, 950-51 (Pa. 2001) (explaining that summary judgment may be entered where additional discovery would not have aided in establishing any material fact). Therefore, Appellant is not entitled to relief on this claim.

**Act 91 Notice**

Finally, Appellant argues that Appellee's Act 91 notice was defective for several reasons. Appellant's Brief at 68-72. Appellant contends that

Appellee's Act 91 is incorrect because it identified Appellee as the investor and mortgage loan servicer but that MERS eRegistry System lists different parties as the investor and loan servicer. *Id.* at 68. Further, Appellant claims that the Act 91 notice was incorrect because the notice was sent prior to MERS's assignment of the mortgage to Appellee. *Id.* at 70. Appellant contends that these discrepancies relate to Appellee's standing and were "highly prejudicial/perplexing" to Appellant. *Id.* at 71.

Next Appellant claims that Appellee failed to submit proof that it sent the Act 91 notice via certified mail. *Id.* at 69. Appellant also argues that the Act 91 notice did not comply with 12 Pa. Code § 31.203 because it was sent on Appellee's letterhead. *Id.* at 69-70. Further, Appellant contends that the Act 91 notice was incorrect because it stated that the loan was assumable, which is inconsistent with the Note and Mortgage, which both state that the loan is not assumable without the approval of the VA. *Id.* at 70.

This Court has explained that

"[t]he purpose of an Act 91 notice is to instruct the mortgagor of different means he may use to resolve his arrearages in order to avoid foreclosure on his property and also gives him a timetable in which such means must be accomplished. 35 P.S. § 1680.403c." *Fish v. Pennsylvania Housing Fin. Agency*, 931 A.2d 764, 767 (Pa. Cmwlth. 2007). The relevant statutory language, governing notice to the mortgagor before any legal action may be taken by a mortgagee, provides:

(a) Before any mortgagee may accelerate the maturity of any mortgage obligation covered under this article, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the mortgage debtor for such mortgage obligation, such mortgagee shall give the mortgagor notice

- 20 -

as described in [35 P.S. § 1680.403c]. Such notice shall be given in a form and manner prescribed by the agency. Further, no mortgagee may enter judgment by confession pursuant to a note accompanying a mortgage, and may not proceed to enforce such obligation pursuant to applicable rules of civil procedure without giving the notice provided for in this subsection and following the procedures provided for under this article.

35 P.S. § 1680.402c. Moreover, section 1680.403c ("Notice requirements") indicates in pertinent part that:

(a) Any mortgagee who desires to foreclose upon a mortgage shall send to such mortgagor at his or her last known address the notice provided in subsection (b): Provided, however, That such mortgagor shall be at least sixty (60) days contractually delinquent in his mortgage payments or be in violation of any other provision of such mortgage.

(b)(1) . . . The notice shall be in plain language and specifically state that the recipient of the notice may qualify for financial assistance under the homeowner's emergency mortgage assistance program. This notice shall contain the telephone number and the address of a local consumer credit counseling agency. This notice shall be in lieu of any other notice required by law. This notice shall also advise the mortgagor of his delinquency or other default under the mortgage and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise.

35 P.S. § 1680.403c.

***Wells Fargo Bank, N.A. ex rel. Certificate Holders of Asset Backed Pass-through Certificates Series 2004-MCWI v. Monroe***, 966 A.2d 1140, 1142-43 (Pa. Super. 2009).

Further, our Supreme Court has explained that a notice that does not meet the requirements of Act 91 is defective, but "a defective Act 91 notice

does not deprive the courts of subject matter jurisdiction[.]" ***Beneficial Consumer Disc. Co. v. Vukman***, 77 A.3d 547, 553 (Pa. 2013).

Further, a defendant asserting that the plaintiff failed to comply with Act 91 must show prejudice in order to be entitled to relief. ***See Monroe***, 966 A.2d at 1143-44; ***see also*** 35 P.S. § 1681.5(1) (providing that the trial court may award relief when a plaintiff has failed to comply with the notice requirements of Act 91 **and the defendant has been prejudiced** by the plaintiff's failure to comply with Act 91).

Before we address the merits of this issue, we note that the only claim Appellant presented to the trial court regarding the Act 91 notice was that the notice incorrectly identified Appellee as the investor and loan servicer. ***See*** Appellant's Reply, 1/11/24, at 2-3 (unpaginated). Appellant failed to raise his other claims related to the Act 91 notice before the trial court; and therefore, these issues are waived on appeal. ***See Moranko***, 118 A.3d at 1115-16; Pa.R.A.P. 302(a).

In its Rule 1925(a) opinion, the trial court did not address Appellant's specific claim but concluded that Appellant's other claims regarding supposed defects in the Act 91 notice were meritless because Appellant failed to establish prejudice. ***See*** Trial Ct. Op. at 20-21 (citing ***Monroe***, 966 A.2d at 1142-45). Further, as stated above, the trial court concluded that Appellee has established that it is the current holder of the Note and the Mortgage. ***See id.*** at 11-12, 17.

Based on our review of the record, we conclude that Appellant has failed to establish that the Act 91 Notice was defective because it correctly identified Appellee as the investor. *See Sampathkumar*, 241 A.3d at 1144. Further, even if there was a defect on the face of the Act 91 Notice, we agree with the trial court that Appellant has failed to establish that he was prejudiced by any defect. *See Monroe*, 966 A.2d at 1143-44; *see also* 35 P.S. § 1681.5(1). Accordingly, Appellant is not entitled to relief on this claim.

For these reasons, we affirm the trial court's order granting summary judgment in favor of Appellee.[8]

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

---

[8] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| **USAA FEDERAL SAVINGS BANK,** | : |
| **Plaintiff/Appellee,** | :     **January Term, 2019, No. 00496** |
| | :     **(190100496)** |
| **v.** | : |
| **BELFI,** | :     **Superior Court Docket No.** |
| | :     **913 EDA 2024** |
| **Defendant/Appellant.** | : |
| | : |

**Hangley, J.**

## OPINION

On March 8, 2024, this Court granted summary judgment to the Plaintiff/Appellee,

USAA Federal Savings Bank ("USAA"), in this mortgage foreclosure action. This Court did so

because USAA demonstrated that there was no genuine issue of material fact as to any of the

elements that USAA was required to prove, including that Defendant/Appellant, Alexander

Belfi, defaulted on his mortgage loan and that USAA was entitled to foreclose. Belfi, who has

represented himself throughout the litigation, contends that this Court erred in nineteen different

ways. Some of Belfi's arguments misstate the law; others might have legal merit under different

circumstances, but have no factual support in the record; others are incomprehensible; and all of

them were waived, because Belfi failed to properly assert any defenses or properly respond to

USAA's summary judgment motion. Accordingly, the Superior Court should affirm.

OPFLD-Usaa Federal Savings Bank Vs Belfi [VKS]



19010049600118

1

## I.    BACKGROUND

### A.    The Years of Litigation Leading Up to the Summary Judgment Deadline

USAA filed a Complaint in Mortgage Foreclosure on January 10, 2019. The Complaint included the following allegations: On June 16, 2016, Belfi entered into a mortgage (the "Mortgage") for a property at 1502 East Moyamensing Avenue in Philadelphia, PA (the "Property"). Complaint ¶ 1, 3 & Ex. A. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for USAA. *Id.* ¶ 1(a). The Mortgage provided that MERS "is a separate corporation that is acting solely as a nominee for Lender [*i.e.,* USAA] and Lender's successors and assigns." *Id.* Ex. A ¶ C. It stated further:

> Borrower [*i.e.*, Belfi] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

*Id.* Ex. A at 3, "Transfer of Rights in the Property."

Belfi also executed a promissory note (the "Note") promising to pay $400,000 to the lender, USAA. Complaint ¶ 4 & Ex. B. In 2018, MERS assigned the Mortgage to USAA, Complaint ¶ 1(d), making USAA "the current holder of the mortgage by operation of law." *Id.* ¶ 2. The Mortgage was in default, the Complaint alleged, with $389,518.26 owed as of October 31, 2018. *Id.* ¶ 8. USAA sought judgment *in rem* in the amount set forth in the Complaint, along with additional charges and fees.

Belfi, representing himself, filed a document on May 16, 2019, captioned "Memorandum and Counterclaim in Opposition of Plaintiffs' Complaint; Failure to Make Service Upon

2

Defendant" (the "Counterclaim"). In this document, Belfi alleged that he had not been served properly. He also stated that

> To address paragraph seven of the plaintiff's complaint which describes why the Mortgage is in default, the defendant does not confirm nor deny the allegation as the delinquent balance is a direct result from fraud and frivolous litigation against Mr. Belfi.

Counterclaim ¶ 14. He explained that a third party had defrauded him, leading to litigation in federal court, which somehow caused him to become delinquent on his mortgage payments. *Id.* ¶¶ 14-21. USAA filed Preliminary Objections to the Counterclaim. The Honorable Edward Wright entered an Order that overruled USAA's Preliminary Objections[1] and ordered Belfi to answer the Complaint within twenty days. Amended Order dated Sept. 11, 2019. USAA filed an Answer and New Matter to the Counterclaim on October 15, 2019. Belfi did not respond to the New Matter.

Belfi answered the Complaint on October 1, 2019. He admitted that the Mortgage and its assignment existed and had been publicly recorded, Answer ¶ 1; that he lived at and owned the Property, which was the property described in the Mortgage, *id.* ¶¶ 3, 5-6; and that a notice pursuant to the Homeowners' Emergency Mortgage Assistance Act of 1983, 35 P.S. § 1680.402c, *et seq.* (the "Act 91 Notice") had been sent to him, *id.* ¶ 11. He generally denied the allegation that he had fallen behind on his payments, stating, "strict proof thereof is demanded at trial." *Id.* ¶ 7. He also denied knowledge or information sufficient to respond to the allegations setting forth the principal, interest, and fees that he allegedly owed, again demanding "strict proof." *Id.* ¶¶ 7-10. Finally, Belfi denied all allegations relating to the legal effect of the

---

[1] Although this Order, on its face, was in Belfi's favor, it had the effect of overruling Belfi's contention that service of process was insufficient. Belfi made no further objections to service and does not raise this issue on appeal.

3

Mortgage, assignment, and Note. For example, he denied that USAA was the holder of the Mortgage, that the Property was subject to the Mortgage, that the Note was evidence of a debt, that he was a mortgagor, and that the Act 91 Notice complied with Act 91. *Id.* ¶¶ 2-4, 6, 12. Belfi did not explain any of these denials, and did not file New Matter. Importantly, neither the Counterclaim nor the Answer asserted any of the defenses that Belfi would go on to raise nearly five years later, after USAA moved for summary judgment.

Belfi then attempted to remove the case to federal court. The federal court remanded it, holding that as a resident of the forum state, Belfi was not entitled to removal based on diversity jurisdiction. *See* Memorandum dated Sept. 28, 2020, docketed on Dec. 9, 2020. On December 13, 2021, this Court scheduled a mortgage conciliation conference. Three days later, Belfi filed for bankruptcy. *See* Suggestion of Bankruptcy dated January 7, 2022. The case remained on deferred status until the bankruptcy case was closed, on June 24, 2022, and USAA filed a praecipe to remove the case from deferred status, on August 11, 2022. On March 16, 2023, this Court issued a Case Management Order assigning the case to the February 2024 trial pool. The Case Management Order provided, among other things, that "All *Discovery* … shall be completed no later than **NOVEMBER 6, 2023**," and "*Dispositive motions* must be filed no later than **DECEMBER 4, 2023**" (emphasis in original).

Belfi did not serve discovery or file any discovery motions. USAA served discovery on Belfi and did not receive a response.

## B. USAA's Motion for Summary Judgment and Belfi's Flurry of Filings

On December 4, 2023, the dispositive motions deadline, USAA filed a Motion for Summary Judgment ("USAA MSJ"). In its Motion, USAA contended that there were no genuine issues of material fact as to the following:

- Belfi had executed the $400,000 Note, USAA MSJ ¶¶ 1;

4

- The Note named USAA as the Lender, and USAA was "in possession of the original duly indorsed Note," *id.* ¶¶ 1, 4;

- Belfi had executed the Mortgage and delivered it to MERS, as USAA's nominee, which later assigned the Mortgage to USAA, *id.* ¶¶ 2-3;

- Both the Mortgage and the assignment were recorded, *id.*;

- Belfi had defaulted on his obligations on the Note and had not cured the default, *id.* ¶¶ 7, 9;

- USAA had sent a legally sufficient Act 91 Notice, *id.* ¶ 8; and

- $502,713.44, plus additional interest and other charges, was due on the Note, *id.* ¶¶ 35-37.

USAA provided evidence of each of these facts in the form of documents and an affidavit. USAA also relied on Belfi's express and tacit admissions, including his failure to respond with specificity to the material allegations of USAA's Complaint and his failure to answer USAA's discovery, which included Requests for Admissions. *See id.* ¶¶ 27-31 & Exs. P-Q.[2] USAA also sought summary judgment on Belfi's Counterclaim, arguing that the Counterclaim did not state a claim upon which relief could be granted and that Belfi's failure to respond to USAA's New Matter to the Counterclaim eliminated any potential issues of fact. *Id.* ¶¶ 39-44.

Belfi did not respond to the numbered paragraphs of USAA's Motion. Instead, on December 5, 2023, he filed a "Response and Cross-Motion" ("MSJ Response"). This document did not contradict any of the facts set forth in USAA's Motion. Instead, it was a free-form

---

[2] Belfi states that because he changed addresses while the lawsuit was pending, he did not learn about the Requests for Admissions and other discovery until USAA moved for summary judgment. For two reasons, it was not inequitable for USAA to rely on the unanswered Requests for Admissions in its Motion. First, although Belfi argues that USAA's lawyers should have been able to figure out that he had moved, he does not contend that he gave his new address to them or to the Court; he therefore cannot complain that he did not receive mailings. Second, Belfi could have sought leave to serve belated responses, but he did not.

5

discussion of issues that Belfi claimed to find suspicious or questionable. For example, Belfi argued that USAA lacked standing because it was using a fictitious name, that USAA was not a real party in interest because its name did not appear on Belfi's account statements, that the United States Department of Veteran Affairs ("VA") should have been notified of the action, that the mortgage debt had been discharged in bankruptcy, that Belfi had changed addresses and had not received USAA's discovery requests, that the assignment of the Mortgage was defective, that Belfi questioned certain line items in USAA's calculation of the amounts owed, that the assignment of the Mortgage violated an alleged "Veteran Loan Guaranty Agreement," that the Act 91 Notice was defective, and that making electronic copies of the Note violated the law. This Response was verified, but did not include an affidavit. It attached a handful of unauthenticated documents—mortgage statements, a change of address form from the U.S. Post Office, the alleged Indenture and Deed from Belfi's purchase of the Property, and some internet printouts. None of these controverted the evidence set forth in USAA's Motion.

Although the deadline for dispositive motions had passed, Belfi then launched a barrage of motions and other filings, each of which added new legal arguments, alleged new facts, and attached new (unverified and unauthenticated) documents:

- A Motion for Summary Judgment, filed on December 19, 2023. As far as this Court could tell, this document was identical to the MSJ Response that Belfi had just filed on December 5.

- A Motion to Dismiss, also filed on December 19, 2023. This Motion appears to be a cut and paste of the argument on the first several pages of Belfi's MSJ Response: that USAA lacked standing and was proceeding under a fictitious name, that USAA was not a real party in interest because its name did not appear on Belfi's account statements, and that the VA should have been notified of the action.

- A Motion for Extraordinary Relief, filed on January 4, 2024, which asked this Court to reopen discovery and extend the discovery deadline.

- A Motion to Compel, filed on January 8, 2024 (more than two months after the discovery deadline). This Motion asked this Court to compel USAA to respond to 51 interrogatories. In the Motion, Belfi argued that he suspected that the Mortgage and Note had been securitized and might therefore have become unenforceable. This Court administratively dismissed the Motion to Compel on January 22, 2024, for failure to provide a certification that Belfi had tried to resolve the discovery dispute.

- A subpoena on MERS. Belfi attempted to serve this on January 9, 2024, without follow the notice procedures for issuing subpoenas on nonparties set forth in the Pennsylvania Rules. See Motion to Quash filed February 14, 2024, Ex. E.

- A Reply in Support of the Motion to Dismiss, filed on January 11, 2024. In this unverified document, Belfi made new factual assertions, including that old correspondence and an internet search showed that USAA was acting as an unauthorized mortgage servicer.

- A "Reply in Further Support of Defendant's Motion for Extraordinary Relief," filed on January 23, 2024. In this unverified document, Belfi made the surprising announcement that he was in possession of the original "blue-inked signed Note." He did not explain why this purported original Note was first coming to light nearly five years after USAA filed suit. Belfi also argued, *inter alia*, that USAA had violated the Electronic Transactions Act, 73 Pa. C.S. § 2260.101 *et seq.*, by attaching a PDF copy of the Note to its Complaint and that USAA employees had committed fraud in the assignment of the Mortgage.

On January 31, 2024, the Honorable Joshua Roberts signed an Order granting Belfi's Motion for Extraordinary Relief and extending all deadlines by thirty days. Because Judge Roberts crossed out Belfi's proposed language allowing the parties to conduct additional discovery, it is not clear whether this Order was intended to reopen discovery, rather than merely extending the trial date. In any event, Belfi did not make any attempt to conduct additional discovery in the thirty days following the Order. He also did not respond to the discovery requests that USAA had served before the discovery deadline (which he claimed not to have known about until he reviewed USAA's Motion for Summary Judgment). Instead, on February 1, 2024, Belfi filed a "Motion for Sanctions and Fraud on the Court." This document, which was unverified and did not include an affidavit, accused various entities associated with the Note and

Mortgage of committing "fraud pertaining to the Secondary Market," engaging in "mortgage foreclosure fraud," filing a "fraudulent public record," and "with[olding] evidence from this court in bad faith." The Motion attached several documents, all of which appeared to have been in Belfi's possession since 2022 or earlier. On March 4, 2024, Belfi refiled the Motion to Compel that this Court had administratively dismissed.

On March 7, 2024, this Court denied Belfi's Motion for Sanctions, Motion to Dismiss, and Motion for Summary Judgment. The next day, this Court issued an Order granting USAA's Motion for Summary Judgment. This Court awarded the specific amounts averred in the Motion, plus interest, but did not award additional, unsupported amounts that USAA sought.

**C.    This Appeal**

Belfi filed a Notice of Appeal on March 21, 2024. He attached this Court's Orders granting USAA's Motion for Summary Judgment and denying his Motions for Summary Judgment, Dismissal, and Sanctions. This Court ordered a Concise Statement of Matters Complained of on Appeal. On March 28, 2024, Belfi filed a Statement raising 19 issues:

1.  Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment because there was still a remaining issue of material fact related to Belfi's allegation that the Plaintiff was not the owner of the Note, USAA Federal Savings Bank, therefore, the Complaint did not set forth a cause of action or show USAA FSB was the real party in interest?

    a.  Did the trial court err in [] determining hat USAA FSB was the Note holder and mortgagee, despite Belfi being the Note holder, holding the original blue ink signed promissory note?

2.  Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment because USAA FSB is operating without a mortgage license pursuant to 7 Pa.C.S. § 6101 et seq.[?]

3.  Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment because there was still an

8

issue of material fact concerning the faulty verification that was attached to the Complaint and summary judgment?

4. Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment because there was still an issue of material fact that USAA FSB failed to adhere to the VA Servicing guidelines?

5. Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment and dismissing the defendant's Counterclaims with prejudice when the counterclaims filed in federal court, case no. 2-19-cv-03607, were the governing counterclaims?

6. Did the Trial Court commit a reversible error by granting the Plaintiff's Motion for Summary Judgment, because of the then remaining issue of material fact that there had been no transfer of the Note to the Plaintiff, from the original lender, to provide a cause of action for the Plaintiff to have filed the Complaint?

7. Did the Trial Court commit a reversible error when it granted the Plaintiff's Motion for Summary Judgment, because of the then remaining issue of material fact concerning the required power of attorney in reference to MERS, as a nominee, which was not filed of record before the Complaint was filed, and therefore, the Complaint did not set forth a cause of action?

8. Did the trial court err in not dismissing the action due to USAA FSB['s] lack of registration as a its (sic) Fictitious Name?

9. Did the trial court err in not joining Mortgage Electronic Registration System, Inc (MERS) as an indispensable party?

10. Can MERS, as a nominee of a mortgage lender, holding only legal title to the mortgage but not holding the correlative promissory note, exercise the statutory power of sale, foreclose on the mortgaged property and transfer interest?

11. Did the trial court err in determining the plaintiffs ACT 91 [notice] was not defective[?]

12. Did the court err in granting USAA FSB['s] Motion for Summary Judgment when matters of public record directly challenge plaintiffs' standing that they "no longer had any immediate, direct

pecuniary or substantial interest in the real estate or the *in-rem* mortgage foreclosure action."[?]

13. Should the VA be joined as an indispensable party as it has guaranteed the loan secured by the mortgage?

14. Did Omar Basped, acting as both the assignee and assignor, have the authority to assign Belfi's Mortgage from MERS to USAA?

15. Did the trial court err in granting the plaintiff's Motion for Summary Judgment when the plaintiff did not respond to discovery requests and Motions to Compel were still outstanding?

16. Did USAA FSB violate 1999 Act 69 § 901 by converting a paper Note into an electronic PDF?

17. Is Belfi at risk of double jeopardy, given multiple Notes exist for the same property and it was securitized?

18. Does Bank of New York Mellon also have the right to foreclose along with the investors of the Ginnie Mae pool which his loan was securitized into?

19. Did the trial court err in granting plaintiffs Motion for Summary Judgment against the VA memorandum, Circular 26-23-25, which postpones foreclosures until May 31, 2024[?]

## II. STANDARD OF REVIEW

The Superior Court's scope and standard of review of a trial court's order granting summary judgment is as follows:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.

10

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

Summary judgment in mortgage foreclosure actions is subject to the same rules as other civil actions.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citations omitted).

To the extent Belfi is appealing this Court's denial of his Motion to Dismiss, the Superior Court should apply the standard of review of an order overruling preliminary objections.

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Albert v. Erie Ins. Exch.*, 65 A.3d 923, 927-28 (Pa. Super. 2013).

## III. DISCUSSION

### A. USAA's Motion for Summary Judgment Demonstrated That There Were No Genuine Issues of Material Fact and That USAA Was Entitled to Judgment as a Matter of Law

In its Motion, USAA presented extensive evidence that Belfi had entered into the Note and Mortgage, that USAA was the original and current holder of the Note and the assignee of the

11

Mortgage, that Belfi had defaulted, and that the amount owed on the Note was what USAA claimed it to be. "The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount." *Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 465 (Pa. Super. 2014). Belfi's vague and general responses to the key allegations of USAA's Complaint constituted such admissions. "[I]n mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing [on the mortgage] must be considered an admission of those facts." *First Wis. Tr. Co. v. Strausser*, 653 A.2d 688, 692 (Pa. Super. 1995); *see* Pa. R. Civ. P. 1029(c) Note.

### B. Belfi Waived All the Arguments He Raises on Appeal by Failing to Properly Assert Defenses or Respond to USAA's Motion for Summary Judgment

Throughout this litigation, Belfi failed to comply with the basic rules of civil procedure. He left pleadings and discovery unanswered, missed deadlines, filed repetitive, scattershot documents not permitted under the rules, and made untimely allegations that he never backed up with any record evidence. This conduct made it very difficult for USAA to respond to his filings and for this Court to assess them. As discussed below, Belfi's procedural missteps were so serious that they waived his arguments.

Belfi's *pro se* status does not excuse his flouting of court rules. As the Superior Court explained in *Jones v. Rudenstein*,

> Appellant apparently labors under the false assumption that by proceeding *pro se* he is absolved of all responsibility to comply with procedural rules, and that the appellee and/or the court had some affirmative duty to walk him through the procedural requirements, or to ignore the procedural requirements, in order to reach the merits of his claim. Such is not the case. The United States Supreme Court has explained: The right of self-representation is not a license to

12

> abuse the dignity of the courtroom. Neither is it a license not to
> comply with relevant rules of procedural and substantive law.

585 A.2d 520, 522 (Pa. Super. 1991) (quoting *Farretta v. California*, 95 S.Ct. 2525, 2540 n. 46 (1975)). From his filings, it appears that Belfi is a sophisticated person who is capable of reviewing legal documents and doing basic legal research. He has been able to follow court procedures when he cares to do so; he must be held responsible when he declines to follow them.

### 1. Belfi Waived the Defenses Set Forth in His Motion to Dismiss by Failing to Assert Them in Preliminary Objections or His Answer

Belfi filed his Motion to Dismiss long after the Court's deadline for dispositive motions. For this reason alone, this Court did not err in denying the Motion.

Moreover, Belfi had long since waived all the arguments he made in the Motion. Belfi argued that USAA did not have standing to sue, that it was not permitted to sue because it was using a fictitious name, and that USAA had failed to allege that it complied with federal regulations involving notice to the VA. The standing and fictional name arguments implicate USAA's capacity to sue, a defense that must be raised either in preliminary objections or in an answer and new matter. *See* Pa. R. Civ. P. 1028(a)(5) ("lack of capacity to sue" may be raised in preliminary objections); *Five Star Bank v. Chipego*, 312 A.3d 910, 918 (Pa. Super. 2024) ("Parties ... may challenge standing either in preliminary objections or in the answer to the complaint."). Belfi's assertion that USAA did not plead that it had notified the VA should have been raised in preliminary objections as a "failure of a pleading to conform to law or rule of court," Pa. R. Civ. P. 1028(a)(2). Because Belfi did not assert any of these defenses in preliminary objections or in his Answer, he waived them. *See* Pa. R. Civ. P. 1032(a).

13

### 2. This Court Properly Granted USAA's Motion for Summary Judgment Because Belfi Failed to Properly Respond to It

A nonmoving party has a duty to respond to a motion for summary judgment. *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1104 (Pa. Super. 2000). In its response, the nonmoving party must identify "(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses ... or (2) evidence in the record establishing the facts" that the moving party claims to be unsupported. Pa. R. Civ. P. 1035.3(a). The Philadelphia County Local Rules require the response to be

> divided into paragraphs, numbered consecutively, corresponding to the numbered paragraphs of the motion for summary judgment. The response shall state whether each of the allegation[s] is admitted or denied. No general denial is acceptable. The factual reasons for the denial or dispute must be specifically stated and the "record" (as that term is defined in Pa.R.C.P. No. 1035.1) supporting the denial or dispute must be attached as an exhibit. A response may also include additional allegations demonstrating any genuine issue of material fact, in which event the responding party must reference and attach a copy of the "record" (as that term is defined in Pa.R.C.P. No. 1035.1) which demonstrates the existence of a genuine issue of material fact.

Phila. Civ. R. *1035.2(a)(4).

The Pennsylvania Rules of Civil Procedure are very specific as to what constitutes the "record" that may be cited in a summary judgment motion or response. Rule 1035.1 defines the "record" as "pleadings ... depositions, answers to interrogatories, admissions and affidavits," and expert reports. The Note to this Rule refers to Pa. R. Civ. P. 76 for the definition of "affidavit"; Rule 76 provides that an affidavit is

> a statement in writing of a fact or facts, signed by the person making it, that either (1) is sworn to or affirmed before an officer authorized by law to administer oaths, or before a particular officer or individual designated by law as one before whom it may be taken, and officially certified to in the case of an officer under seal of

office, or (2) is unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

The Rules further provide that affidavits filed in support of or opposition to a motion for summary judgment

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein. Verified or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Pa. R. Civ. P. 1035.4.

If a party submits factual statements in response to a summary judgement motion that do not comply with these rules, the trial court may not consider those statements. *See Welsh v. National RR Passenger Corp.*, 154 A.3d 386, 390-91 (Pa. Super. 2017) (trial court properly disregarded three signed witness statements because they did not include notary jurats and were not made subject to the penalties of 18 Pa. C.S. § 4904). Similarly, the trial court may disregard unauthenticated documents that are attached to a summary judgment response. *Id.* at 395 (trial court correctly rejected unauthenticated photographs, not previously found in the record, that party attached to summary judgment response).

Here, although Belfi filed a document that he titled a "response" to USAA's Motion, that document did not comply with the Pennsylvania or Philadelphia Rules. He did not use numbered paragraphs or include a paragraph-by-paragraph response to the Motion's numbered paragraphs, and he did not address or respond to the Motion's allegations. Instead, he made a series of legal arguments—many of them irrelevant to the Motion. To the extent Belfi referred to any new facts in his MSJ Response, he did not attach an affidavit or provide any record evidence to support those allegations. The MSJ Response was therefore the equivalent of no response at all.

15

Some of Belfi's subsequent filings contained factual assertions that were at least arguably relevant to the summary judgment issues (for example, Belfi's Reply in Further Support of Defendant's Motion for Extraordinary Relief, filed on January 23, 2024, asserted for the first time that Belfi, and not USAA, possessed the original Note). This Court properly disregarded those assertions in deciding USAA's Motion for Summary Judgment. First, the Rules require a nonmoving party to respond to a motion for summary judgment timely and in a single document; it is not the Court's responsibility to comb through untimely discovery filings to unearth potential issues of fact. Second, Belfi never provided an affidavit, authenticated documents, discovery responses, or any other record evidence to support his new factual assertions. At the summary judgment stage, a party must do more than speculate and vaguely accuse others of wrongdoing; it must back up its allegations with proof. Belfi did not do so.

If a nonmoving party does not properly respond to a motion for summary judgment, the court may enter summary judgment on that basis alone. Pa. R. Civ. P. 1035.3(d); *Harber*, 764 A.2d at 1104. Accordingly, because Belfi did not properly respond to the Motion for Summary Judgment, this Court did not err in granting it. *See, e.g.*, *American Southern Ins. Co. v. Halbert*, 203 A.3d 223, 227 (Pa. Super. 2019) (grant of summary judgment was proper where defendants' response did not cite record evidence); *Cid v. Erie Ins. Group*, No. 1941 EDA 2023, 324 A.3d 1255, at * 3 (Pa. Super. July 23, 2024) (trial court did not err in holding that party's responses to motion for summary judgment were "so deficient in procedure and substance that the responses were akin to filing no response at all").[3]

---

[3] This Court cites this unpublished opinion for its persuasive value. *See* Pa. R.A.P. 126(b).

**C. To the Extent the Superior Court Addresses Belfi's Substantive Arguments, It Should Reject Them**

As discussed above, because Belfi waived all his arguments at the trial court level, the Superior Court need not address them on appeal. If it reaches them, however, it should conclude that they each lack merit. Below, this Court briefly addresses each issue.

**1. Arguments That USAA Does Not Hold the Note (Issue Nos. 1, 6, 12, 17)**

There is no genuine issue of material fact as to whether USAA has the right to enforce the Note. The Note was issued to USAA as the original lender, and USAA provided an affidavit and documentation confirming that it continues to hold the Note. *See supra* § I(B). Belfi has provided no record evidence to the contrary. *See Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 466 (Pa. Super. 2014) (summary judgment proper where "[t]he record ... clearly shows that Bank of America holds the note").

Belfi's argument that the Note may have been securitized, possibly placing Belfi "at risk of double jeopardy," is similarly meritless. Belfi produced no record evidence to support this speculation. Moreover, Belfi is not at risk of being required to pay on the Note more than once:

> [A] note secured by a mortgage is a negotiable instrument, as that term is defined by the [Pennsylvania Uniform Commercial Code] ... [p]ursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question.... Under the PUCC, a borrower is not in peril of double liability or injury by an allegedly defective assignment, for if the assignment to the foreclosing party had been defective, the borrower would not have to pay on the note to another party.

*Gerber v. Piergrossi*, 142 A.3d 854, 862 (Pa. Super. 2016).

17

### 2. Arguments Relating to MERS' Assignment of the Mortgage to USAA (Issue Nos. 7, 9, 10, 14)

Although Belfi's arguments are difficult to follow, he appears to object to the role of MERS in the issuance and assignment of the Mortgage. Pennsylvania courts have rejected similar challenges. *Bank of America* involved a similar mortgage issued to MERS as nominee, as in this case, and then assigned by MERS. The mortgage contained a description of MERS's role that is identical to that in the Mortgage in this case. The Superior Court rejected the appellee's argument that MERS could not assign the mortgage. "Appellant's mortgage granted MERS the right to exercise 'any and all' interests incidental to legal title. Those interests include the ability to assign the mortgage." 102 A.3d at 466.

Even if there were an issue with the assignment, Belfi would not have standing to raise it. Because "a borrower is not in peril of double liability or injury by an allegedly defective assignment ... a borrower lacks standing to challenge the validity of the assignment." *Gerber*, 142 A.3d at 862.

### 3. Argument That USAA Lacked a Mortgage License (Issue No. 2)

Belfi contends that "USAA FSB is operating without a mortgage license pursuant to 7 Pa. C.S. § 6101 *et seq.*" However, the Mortgage Licensing Act, 7 Pa. C.S.A. § 6101 *et seq.*, does not apply to USAA, which is a regulated banking institution. *See* 7 Pa. C.S.A. § 6101(a) (Act "does not apply to a banking institution or federally chartered or State-chartered credit union, if the primary regulator of the banking institution or federally or State-chartered credit union supervises the banking institution or federally or State-chartered credit union"); 7 Pa. C.S.A. § 6112(1) (no mortgage license is required for regulated banking institution). Even if USAA were required to have a license, Belfi does not explain how a licensing issue would excuse him from his obligations under the Mortgage and Note.

18

### 4. Argument That USAA Used a Fictitious Name to Sue (Issue No. 8)

This Court does not understand Belfi's contention that USAA filed suit using a fictitious name. "USAA Federal Savings Bank" is the name that appears on the Complaint, the Note, and all relevant documents and filings; Belfi does not explain why this name is fictitious. Therefore, the Fictitious Names Act does not apply. Moreover, even if USAA were using a fictitious name, Belfi could not rely on that fact to resist summary judgment. "[T]hose who deal with an unregistered party and accept the benefits of business transactions, having full knowledge of the party's true identity notwithstanding the fictitious name, are estopped to deny the party's capacity to sue. If such a person knows with whom he is dealing and is not deceived, he cannot assert the lack of capacity to sue under the Fictitious Names Act." *George Stash & Sons v. New Holland Credit Co., LLC*, 905 A.2d 541, 543 (Pa. Super. 2006) (citations omitted).

### 5. The "Electronic Document" Argument (Issue No. 16)

Pennsylvania's Electronic Transactions Act, 73 P.S. § 2260.101 *et seq.*, governs "transactions between parties each of which has agreed to conduct transactions by electronic means." 73 P.S. § 2260.301(b). Among other things, the Act gives consumers the right to consent, or withhold consent, to transactions conducted by electronic means. *Id.* § 2260.901. Here, Belfi acknowledges that the Mortgage and Note were executed on paper, not electronically. Accordingly, the Electronic Transactions Act does not apply; no part of USAA or MERS' transactions with Belfi were conducted electronically. Belfi is arguing, instead, that the Electronic Transactions Act prohibits a party to a transaction from making electronic copies of the transaction documents. "The Defendant Alex Belfi, did not authorize his signature to be converted from a hard copy, wet ink signature to an electronically formatted PDF file." Reply in Support of Motion for Extraordinary Relief filed January 21, 2024, at 3. This argument is frivolous.

19

### 6. The VA Arguments (Issue Nos. 4, 13, 19)

Each of these arguments starts with Belfi's assertion that the VA guaranteed the mortgage loan in the "Veteran Loan Guaranty Agreement" he referred to in his MSJ Response. Although Belfi provided one document suggesting that he applied for a VA guarantee, *see* Ex. 5 to Reply in Further Support of Defendant's Motion for Extraordinary Relief, this Court has found no Guaranty Agreement, or any other evidence that a guarantee was made or that it had any particular terms and conditions, in any of Belfi's filings. Therefore, even if a VA guarantee would have the legal effects that Belfi claims—an issue this Court does not reach—Belfi did not show a factual issue on this point.

### 7. The Act 91 Argument (Issue No. 11)

In its Motion, USAA demonstrated that the Act 91 Notice it sent to Belfi, USAA MSJ Ex. E, complied with the requirements set forth in 35 P.S. § 1680.403c. USAA's Brief in Support of USAA MSJ filed December 4, 2023, ¶ (IV)(G). The arguments to the contrary set forth in Belfi's MSJ Response lack merit. First, Belfi argued that the Notice "incorrectly identified Belfi's mortgage as 'assumable.'" MSJ Response at 8. While Belfi is correct that the Notice describes the Mortgage as "assumable" while the face of the Mortgage says it is not, he does not explain how this discrepancy affected him or legally invalidated the Notice. Without a showing of prejudice, a trivial defect in an Act 91 Notice does not preclude summary judgment in a mortgage foreclosure action. *See Wells Fargo Bank, N.A. v. Monroe*, 966 A.2d 1140, 1142-45 (Pa. Super. 2009). Second, Belfi argued that "[t]he Notice also did not contain a direct phone number to the mortgage servicer agent as required by the ACT." MSJ Response at 8. This is incorrect; the name and telephone number for the contact person on his account appear on the Notice. *See* Complaint Ex. C. Finally, Belfi claims that the Notice "categorically did not adhere to the current version of ACT 91 format," which he claims appears in a June 1999 Pennsylvania

Bulletin issue. MSJ Response at 8. In fact, the Notice exactly matches the current format, which issued in 2021. *See* 12 Pa. Code § 31.211.

### 8.    Incomprehensible Arguments (Issue Nos. 3, 5, 18)

This Court does not know what Belfi means by a "faulty verification that was attached to the Complaint and summary judgment" (No. 3), a competing set of "governing counterclaims" that were filed in federal court (No. 5), or the right of Bank of New York Mellon to foreclose on the Mortgage (No. 18). A review of Belfi's filings does not clarify things; this Court does not believe he ever raised these issues. Because these paragraphs of the Concise Statement are so vague that it is impossible for this Court to address them, the issues are waived for appeal. Pa. R.A.P. 1925(b)(4)(ii, vii).

### 9.    The Discovery Argument (Issue No. 15)

Belfi contends that this Court erred in granting summary judgment because he had not completed discovery.[4] This argument fails. "Although parties must be given reasonable time to complete discovery before a trial court entertains any motion for summary judgment, the party seeking discovery is under an obligation to seek discovery in a timely fashion." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1124 (Pa. Super. 2004) (citations omitted). Here, Belfi's attempts to seek discovery could hardly have been less timely. He served no discovery in 2019, 2020, 2021, 2022, or 2023, even after the Court issued a Case Management Order setting a discovery deadline of November 6, 2023. He first attempted to conduct discovery by filing a Motion to Compel in January 2024. When this motion was rejected as procedurally deficient, Belfi waited another several weeks to refile the same motion.

---

[4] Belfi states that USAA "did not respond to discovery requests." Statement of Matters Complained of on Appeal ¶ 15. This is false. Belfi never served discovery requests on USAA.

Where, as here, "ample time for discovery has passed, the party seeking discovery (and opposing summary judgment) is under an obligation to show that the information sought was material to their case and that they proceeded with due diligence in their attempt to extend the discovery period." *Reeves*, 866 A.2d at 1124. Belfi made no attempt to show that he exercised due diligence, and his lack of due diligence is obvious. He also made no showing that the information he sought was material. In *Reeves*, the Superior Court held that where a plaintiff had had seven months to complete discovery and did not show due diligence or materiality, the trial court did not abuse its discretion by granting summary judgment while the plaintiff's motion to compel discovery was pending. *Id.* at 1125. Similarly, here, this Court did not abuse its discretion by ruling when it did. *See also Fort Cherry School Dist. v. Gedman*, 894 A.2d 135, 140 (Pa. Super. 2006) (where nonmoving party had had 15 months to conduct discovery and did not explain why this time was inadequate, trial court did not abuse its discretion in granting summary judgment); *First Wisconsin Trust Co. v. Strausser*, 653 A.2d 688, (Pa. Super. 1995) (trial court did not err in granting summary judgment to mortgagee in foreclosure action where mortgagor had not conducted discovery. "This court is unsympathetic to [mortgagor's] concerns" where almost two years passed between filing of answer and filing of summary judgment motion "without any effort on the part of [mortgagor] to conduct discovery.").

22

## IV. CONCLUSION

At the outset of this case, USAA alleged that Belfi had secured a loan by mortgaging the Property and then defaulted on the loan, giving USAA the right to foreclose. Since then, USAA has proven these allegations, and Belfi has not presented any reason to dispute them. Instead, Belfi has tried to muddy the waters with flawed, unsupported, and irrelevant arguments. This Court properly rejected these distractions and resolved the case. For the reasons stated above, the Superior Court should affirm this Court's grant of summary judgment.

BY THE COURT:

_____
**MICHELE D. HANGLEY, J.**
**December 31, 2024**

23